[Civ. No. 7437. Fifth Dist., Mar. 16, 1983.]

JESUS SIDRONIO GOMEZ SANDOVAL, Petitioner, v.
THE SUPERIOR COURT OF KINGS COUNTY, Respondent;
DEERE & COMPANY et al., Real Parties in Interest.

COUNSEL

Bruce Albion Bailey, Gregory T. Price and Rudy L. Savala for Petitioner.

No appearance for Respondent.

Cooley, Godward, Castro, Huddleson & Tatum, Thomas A. H. Hartwell, Craig H. Casebeer and John B. Bates, Jr., for Real Parties in Interest.

OPINION

**FRANSON, Acting P. J.—**

### Introduction

Two pretrial questions are presented in this products liability case alleging a design defect in the defendant manufacturer's product: (1) whether a "final" judgment was entered in a prior action involving the same defendant and another plaintiff so as to permit the application of the collateral estoppel doctrine? and (2) assuming the first question is answered in the affirmative, whether the collateral estoppel doctrine should be applied to preclude the defendant from relitigating the design defect issue in the present action? The prior action was the first action against the defendant resulting in a jury determination that the product was defective in design; however, there have since been two jury verdicts in other separate actions—one against and one in favor of the defendant on the design defect issue.

We answer the first question in the affirmative and the second question in the negative. Accordingly, the writ is denied.

### Procedural History

Petitioner seeks damages for personal injuries sustained when he became entangled in a model No. 9900 cotton picking machine manufactured by real parties in interest Deere & Company and John Deere Company (hereinafter Deere). Petitioner alleges the machine is defective in design because it was not equipped with an emergency shutoff switch at ground level which a person en-

tangled in the machine could use to turn off the power. Deere defends the design on the theory that if a shutoff switch were placed at ground level it would encourage the operator to leave the cab without turning off the power contrary to an explicit warning sign posted in the cab.

In June 1982, petitioner moved for partial summary adjudication of the issues, asserting that Deere was barred by collateral estoppel from contesting the equipment was defective because of a judgment entered in an identical case against Deere tried in the San Francisco Superior Court in July 1980 in the action Floyd A. Demanes, special administrator of the estate of William Don Gilbert, deceased, et al., v. John Deere Company et al. (Super. Ct. San Francisco, No. 701849; 1 Civ. 52728, app. dism., hereinafter Demanes).

In Demanes, the jury found by special verdict that the Deere cotton picker was defective in design because of the absence of the shutoff switch at ground level and that the defect was the proximate cause of the decedent's death. The jury awarded $262,500 to the administrator Demanes for the wrongful death of the decedent Gilbert after adjusting for the comparative fault of the decedent and his employer (fixed at 25 percent of the total award of $350,000, less workers' compensation liens). The special verdict and a judgment thereon was entered and filed on July 25, 1980.

Deere appealed from the judgment and during the pendency of the appeal, the parties reached a settlement agreement. Pursuant to this agreement entitled "Receipt and Release in Full," Deere agreed to pay $218,837 to the administrator Demanes and to withdraw its appeal. The plaintiffs agreed to give a full release to Deere. The agreement provided that Deere "disclaim[ed] any liability of any kind whatsoever" and the parties agreed to "settle this matter in order to avoid the further expense, inconvenience and distraction of litigation." The agreement further provided that it was "a compromise settlement of a disputed claim and the payment and withdrawal of the Appeal in consideration of this release shall not be construed to be an admission of liability." Finally, the plaintiffs agreed to dismiss their action against Deere with prejudice. The appeal was ordered dismissed by the appellate court on November 9, 1981.

In the instant action, Deere opposed petitioner's motion for summary adjudication of the issue of the defective design of the product on the ground that none of the requirements for application of collateral estoppel was present. The trial court denied the motion on the ground that the Demanes action was never final.[1]

---

[1] Petitioner also relied on the case of Bates v. John Deere Co. (1 Civ. No. 53631, app. pending). In Bates the trier of fact also found that the Deere cotton picker was defective for lack of a cutoff switch. The case is still pending on appeal.

On August 26, 1982, petitioner filed a petition for writ of mandate challenging the trial court's denial of the motion for partial adjudication of the issues. We issued the present order to show cause.

*A "Final" Judgment for Issue Preclusion Purposes in Later Actions Against Deere Was Entered in the Demanes Case*

The Restatement Second of Judgments explains the concept of judgment finality for issue preclusion purposes: "The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of *issue preclusion* (as distinguished from merger and bar), 'final judgment' includes any prior adjudication of an issue in another action that is determined to be *sufficiently firm to be accorded conclusive effect.*" (Rest.2d Judgments, § 13, italics added.) This section "makes the general commonsense point that such conclusive carry-over effect should not be accorded a judgment which is considered merely tentative in the very action in which it was rendered. On the contrary, the judgment must ordinarily be a firm and stable one, the 'last word' *of the rendering court*—a 'final' judgment." (*Id.*, § 13, com. a, italics added.)

As emphasized by the Restatement, it is important to determine whether a judgment is "final" for purposes of appellate review or merger and bar, as distinguished from issue preclusion in subsequent actions. (Rest.2d Judgments, § 13, com. b.) The requirement of finality of judgment is interpreted strictly, as indicated above, when considered for purposes of appellate review or application of bar or merger. Issue preclusion, however, is a different matter. "But to hold invariably that that kind of carry-over is not to be permitted until a final judgment in the strict sense has been reached in the first action can involve hardship—either needless duplication of effort and expense in the second action to decide the same issue, . . ." (*Id.*, § 13, com. g.) The Restatement cautions: "Before [giving carry-over effect], the court should determine that the decision to be carried over was adequately deliberated and firm, even if not final in the sense of forming a basis for a judgment already entered. Thus preclusion should be refused if the decision was avowedly tentative. On the other hand, that the parties were fully heard, that the court supported its decision with a reasoned opinion, that the decision was subject to appeal or was in fact reviewed on appeal, are factors supporting the conclusion that the decision is final for the purpose of preclusion." (*Ibid.*) We would add an additional factor: if a judgment for the plaintiff is settled on appeal favorably to the plaintiff, the decision may be final for issue preclusion purposes provided the other factors of certainty and firmness are satisfied.

■ Although California law is settled that *pending* appeal a trial court judgment is not final and will not be given res judicata effect (Code Civ. Proc.,

§ 1049),[2] once the appeal is settled favorably to the plaintiff and thereafter dismissed, the Restatement analysis and reason itself dictate that the trial court judgment reemerges with sufficient finality to permit the application of collateral estoppel.

A prior decision of this court supports such a holding. In *Louie Queriolo Trucking, Inc.* v. *Superior Court* (1967) 252 Cal.App.2d 194, 196-200 [60 Cal.Rptr. 389] (hg. den., opn. per Conley, P. J., with Gargano and Stone, JJ. conc.), we held that a retraxit (a settlement in which defendant pays plaintiff money in return for a dismissal with prejudice) following a jury verdict finding the defendant liable amounted to a judgment on the merits in favor of the plaintiff which had sufficient finality for res judicata purposes. In that case a truck driven by Hoeye and owned by Louie Queriolo Trucking fell into an excavation made by the Tumblin Company. Hoeye sued Tumblin for personal injuries. In a bifurcated trial the jury found Tumblin liable because it was negligent. Judgment was prematurely entered on the jury's verdict in the partial trial and Tumblin's motion for new trial was denied. Tumblin's appeal from that judgment was later dismissed. Thereafter, before trial on the damage issue, the parties settled the action with plaintiff agreeing to a dismissal with prejudice in return for monetary consideration.

During pendency of the first action, Queriolo Trucking sued Tumblin for property damage to its truck and contents. Following the disposition of the first action, Queriolo Trucking sought to file a supplemental complaint alleging that the liability issue had been resolved against Tumblin and that Tumblin was estopped from denying its negligence and from asserting the contributory negligence on the part of its driver. The trial court denied Queriolo's motion.

We issued a writ of mandate directing the trial court to permit the supplemental complaint to be filed. Although we found that the judgment on the jury's verdict on the liability phase of the earlier trial had been prematurely entered since the damage phase had not been tried, we concluded the dismissal with prejudice following the settlement of the action amounted to a "judgment covering all issues." (252 Cal.App.2d at p. 200.) The court reasoned that the settlement of the first case, which included a payment by the defendant to the plaintiff, was a retraxit "and was equivalent to a judgment in favor of Hoeye on the merits, as to which his employer [Queriolo Trucking] could properly take advantage." (*Ibid.*) Thus, this court used a settlement in favor of the plaintiff made after a jury trial on the issue of liability followed by a judgment of

---

[2]Under the federal rule and in a majority of state courts, the second plaintiff can use a judgment as res judicata in a later trial at any time before the first judgment has been reversed, vacated or modified. The pendency of the appeal does not suspend the operation of an otherwise final judgment as res judicata (see Comment, *Res Judicata and the Bifurcated Negligence Trial* (1969) 16 UCLA L.Rev. 203, 209-210, fn. 23).

dismissal with prejudice pursuant to the settlement agreement to apply collateral estoppel against the defendant.

Justice Stone in his concurring opinion in *Queriolo Trucking, supra* (252 Cal.App.2d at pp. 200-201) emphasized that the so-called retraxit was entered after a jury trial and was not the result of a pretrial settlement made before liability had been judicially determined. "The critical question is whether the [collateral estoppel] doctrine applies to those issues of a . . . trial that are fully litigated whether resolved by a final judgment or by a retraxit after verdict or decision of the court. If collateral estoppel is not applicable, the . . . trial becomes a vehicle by which a defendant can . . . litigate identical liability issues a number of times in multiple actions arising from the same transaction." (*Id.,* at p. 201; see also *Sylvester* v. *Soulsburg* (1967) 252 Cal.App.2d 185 [60 Cal.Rptr. 218] [holding that a stipulated judgment of dismissal for consideration *is* equivalent to a final judgment between the parties on the merits].)

█ Deere argues that *Queriolo Trucking* was incorrectly decided and that we should follow *Lea* v. *Shank* (1970) 5 Cal.App.3d 964 [85 Cal.Rptr. 709, 86 Cal.Rptr. 515] (no petn. for hg. filed) which held that a retraxit with a dismissal with prejudice does not amount to a judgment on the merits in favor of the plaintiff that can be used by a nonparty to the settlement to collaterally estop the defendant in another case. To the contrary, a dismissal with prejudice constitutes a judgment for the defendant. (See also *Clovis Ready Mix Co.* v. *Aetna Freight Lines* (1972) 25 Cal.App.3d 276, 282-283 [101 Cal.Rptr. 820] which declined to apply the *Queriolo Trucking* holding to a retraxit given for consideration *before trial*.)

In *Lea* v. *Shank, supra,* 5 Cal.App.3d 964, plaintiff truck driver Lea and his passenger Doneff were injured when their truck was struck by a truck owned by defendant McAtee and driven by defendant Shank. The two defendants alleged Lea was contributorily negligent. Defendant owner also denied the consensual operation of the truck by the defendant driver. In addition, defendant owner filed a cross-complaint against a third person, Bruner, for damage to his truck, alleging it had been operated with defendant owner's consent and that Bruner's negligence had caused defendant's truck to collide with plaintiff's truck. In support of a motion requesting a ruling on the issue of defendant owner's and Bruner's negligence, the trial court was presented a judgment and a minute order showing two jury determinations in an earlier action by plaintiff's passenger Doneff against defendant driver and Bruner. The judgment and minutes of the clerk recited the jury's findings that defendant driver was negligent, that his negligence was a proximate cause of the collision and that Bruner was not negligent. The trial court noted it had been represented there was no issue of contributory negligence in the action before it and assumed the issue of the defendant's driver's negligence had been conclusively adjudicated. Judgment was rendered for plaintiff.

On appeal, the judgment was reversed with directions to try all issues necessary to determine the question of defendant's liability (including plaintiff's contributory negligence, if any) and to enter judgment for plaintiff against either or both defendants if found to be liable for the damages previously determined. The reviewing court noted the record failed to show that the settlement in the earlier action by plaintiff's passenger was based on an acceptance by defendant driver of the jury's finding of liability in that action; hence, "[t]he settlement of the [prior] action following the return of special verdicts did not serve to make those verdicts binding adjudications available to Lea in his action; . . ." (*Id.*, at pp. 977-979.)

We believe *Lea* incorrectly held that for collateral estoppel purposes "a dismissal with prejudice operates as a judgment in favor of the party dismissed." The only authority cited for this proposition is *McDonald* v. *Severy* (1936) 6 Cal.2d 629, 631 [59 P.2d 98] (5 Cal.App.3d at p. 974) where the Supreme Court's quoted statement was made in the context of deciding whether a motion to set aside a dismissal with prejudice required notice to a party to the action. The court merely cited the general rule that notice of a motion must be given whenever the order sought might affect the rights of an adverse party. (6 Cal.2d at p. 631.)

The purpose of a dismissal with prejudice is to end the litigation and to prevent the plaintiff from again filing suit on the same cause of action or related causes of action arising from the same transaction against the same defendant. (See *Goddard* v. *Security Title Ins. & Guar. Co.* (1939) 14 Cal.2d 47, 55 [92 P.2d 804]; *Bank of America* v. *Department of Mental Hygiene* (1966) 246 Cal.App.2d 578, 583 [54 Cal.Rptr. 899].) We see nothing in the dismissal with prejudice concept that forecloses a finding of finality sufficient to preclude relitigation of the issues decided against the defendant. This is particularly true when the agreement to dismiss with prejudice is part of a substantial settlement in plaintiff's favor after a final judgment in the trial court. ■ Such a settlement and dismissal of the lawsuit can fairly be construed as a judgment favoring plaintiff on the merits. To hold otherwise would exalt form over substance.[3]

Finally, the *Lea* court observed that the record on appeal before it was ambiguous on whether consideration of the contributory negligence of the plaintiff driver as pleaded by the defendant driver had been withdrawn from the first jury. The court was concerned about this and stated there was "an unsatisfac-

---

[3]We find nothing in the dismissal with prejudice provisions of Code of Civil Procedure section 581 which authorizes such a dismissal after a final judgment is entered in the trial court. Once the appeal is filed, jurisdiction of the action is vested in the appeals court. The dismissal of the appeal simply precludes another appeal from being filed. (Code Civ. Proc., § 913.)

After the appeal is dismissed a remittitur normally is issued which reinstates the jurisdiction of the trial court. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, §§ 516, 518, pp. 4464-4465.) Nothing further was done in the Demanes trial court after the filing of the remittitur.

tory record upon which to say the defense of contributory negligence had been withdrawn or waived. The response of counsel for Shank and McAtee might have been intended to express disagreement with the representation that there was no issue of contributory negligence within the more extensive disagreement that 'the issue of liability is res judicata.' " (5 Cal.App.3d at p. 976.)

We construe this language to mean the reviewing court in *Lea* was seriously concerned about the integrity of the jury determination of the defendant's liability in the first action, i.e., since there had been no consideration of the plaintiff driver's contributory negligence, there was substantial doubt regarding the jury's finding of liability on the part of the defendant.[4] In the present case, the question of petitioner's contributory negligence will not be precluded by the former judgment; the jury will consider this particular plaintiff's possible contribution to his own injuries.

To summarize, not only is *Lea* distinguishable from the present case, we reject *Lea*'s holding that a retraxit followed by a dismissal with prejudice may not be construed as a judgment for plaintiff on the merits for collateral estoppel purposes. While facially appealing, *Lea*'s holding does not accord with reality. Under no stretch of the imagination in the present case can the payment of $218,837 on the $262,600 judgment (83 percent of the judgment) be considered a judgment on the merits for Deere; rather, it reflects a considered decision by Deere that pursuing the appeal to its conclusion would result in Deere paying the full judgment plus interest. Deere's facade of continued nonliability by the use of stereotyped language in the settlement agreement does not alter the fact that the plaintiff prevailed in the lawsuit because of the jury's finding of a product defect.[5] If recitals in the prior judgment or court papers were the test of the effect of the judgment on subsequent actions, "the doctrine of *res judicata* would disappear as a legal principle, and the bar of a judgment would depend wholly upon the whim of the first judge, or, more probably, on the form of proposed order drafted by successful counsel. . . . [I]t is the nature of the action and the character of the judgment that determines whether it is *res judicata.*" (*Goddard* v. *Security Title Ins. & Guar. Co., supra,* 14 Cal.2d 47, 54; see also 4 Witkin, *supra,* Judgment, § 179, p. 3320.)

We conclude that the requisite finality for issue preclusion purposes under the collateral estoppel doctrine is met in the instant case. This, however, does not end our inquiry.

---

[4]*Lea* was decided before the comparative negligence doctrine of *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]. Under former law, a plaintiff's contributory negligence was a complete defense.

[5]We make no decision whether a dismissal with prejudice by a plaintiff for a nominal consideration following an appeal by the defendant could be construed as a judgment in plaintiff's favor. Realistically, *it is somewhat difficult to envision such a settlement after the plaintiff has* obtained a final judgment in the trial court.

*The Collateral Estoppel Doctrine Does Not Apply to Successive Products Liability Actions Involving the Same Defendant When There Are Inconsistent Verdicts.*

█ Collateral estoppel is an equitable concept based on fundamental principles of fairness. For issue preclusion purposes it means that a party ordinarily may not relitigate an issue that was fully and fairly litigated on a previous occasion.

The Restatement explains, however, that because the law of collateral estoppel is essentially *equitable* in nature there must be some leeway for reexamination of judgments, i.e., there must be some limit to the principle of finality to accord basic fairness to the parties. (Rest.2d Judgments, Introduction, p. 11.) One of the circumstances to be considered in determining whether a party should be precluded from relitigating an issue with an opposing party is whether "the determination relied on as preclusive was itself inconsistent with another determination of the same issue." (Rest.2d Judgments, § 29, subd. (4).) Comment f to section 29 of the Restatement Second of Judgments amplifies this point: "Giving a prior determination of an issue conclusive effect in subsequent litigation is justified not merely as avoiding further costs of litigation but also by underlying confidence that the result reached is substantially correct. Where a determination relied on as preclusive is itself inconsistent with some other adjudication of the same issue, that confidence is generally unwarranted. The inference, rather, is that the outcomes may have been based on equally reasonable resolutions of doubt as to the probative strength of the evidence or the appropriate application of a legal rule to the evidence. That such a doubtful determination has been given effect in the action in which it was reached does not require that it be given effect against the party in litigation against another adversary."[6]

In *Parklane Hosiery Co.* v. *Shore* (1979) 439 U.S. 322, 324-337 [58 L.Ed.2d 552, 557-566, 99 S.Ct. 645], respondent Shore brought a stockholders' class action in the federal district court for damages and other relief against petitioner, Parklane, and its officers, directors and stockholders who allegedly had issued a materially false and misleading proxy statement in violation of federal security laws and SEC regulations. Before the action came to trial, the SEC sued Parklane in the district court alleging the proxy statement was materially false and misleading in essentially the same respects as respondent had claimed.

---

[6]The reporter's notes to comment f point out that the relevance of the fact that the adjudication relied on as preclusive was itself inconsistent with another adjudication is suggested in *Blumcraft of Pittsburg* v. *Kawneer Company, Inc.* (5th Cir. 1973) 482 F.2d 542, and *Fink* v. *Coates* (S.D.N.Y. 1971) 323 F.Supp. 988, and was relied on in *State Farm Fire & Cas. Co.* v. *Century Home Compon., Inc.* (1976) 275 Ore. 97 [550 P.2d 1185]. (See *Standefer* v. *United States* (1980) 447 U.S. 10, 23, fn. 17 [64 L.Ed.2d 689, 699, 100 S.Ct. 1999, 2007]. Cf. *Desmond* v. *Kramer et al.* (1967) 96 N.J.Super. 96 [232 A.2d 470] where first action had been tried twice to the same outcome.)

After a nonjury trial, the district court entered a declaratory judgment for the SEC and the court of appeals affirmed. Respondent in the case before the Supreme Court then moved for summary judgment against the petitioners, asserting they were collaterally estopped from relitigating the issues that had been resolved against them in the prior SEC suit. The Supreme Court agreed, holding that petitioners hàd had a "full and fair opportunity" to litigate their claims in the SEC action and were estopped from relitigating the question whether the proxy statement was materially false and misleading.

Nevertheless, the Supreme Court cautions that the offensive use of collateral estoppel does not promote judicial economy in the same way defensive use does (*id.*, at p. 329 [58 L.Ed.2d at p. 561]) and concludes, "[T]he preferable approach for dealing with these problems in the federal courts is not to preclude the use of offensive collateral estoppel, but to grant trial courts the broad discretion to determine when it should be applied. The general rule should be that in cases where a plaintiff could easily have joined in the earlier action or where the application of the offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." (*Id.*, at p. 331 [58 L.Ed.2d at p. 562], citing Rest.2d Judgments (Tent. Draft No. 2) § 88, now Rest.2d Judgments, § 29.)

The Supreme Court specifically observed that offensive collateral estoppel would be unfair to a defendant if the judgment relied upon as a basis for estoppel is itself *inconsistent with* one or more previous judgments in favor of the defendant. (439 U.S. at p. 330 [58 L.Ed.2d at p. 562].) It cited Professor Brainerd Currie's "familiar" example of a railroad collision injuring 50 passengers all of whom bring separate actions against the railroad. After the railroad wins the first 25 suits, a plaintiff wins in suit 26. Professor Currie argues an offensive use of collateral estoppel should not be allowed to permit plaintiffs 27 through 50 to recover automatically. (*Id.*, at p. 330, fn. 14 [58 L.Ed.2d at p. 562]; Currie, *Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine* (1957) 9 Stan.L.Rev. 281, 304.)[7] (Also, in such a situation

---

[7]Currie reasoned that the 26th judgment would be an "aberration." If preclusive effect should not be given to the 26th judgment, then it similarly should not be given to an adverse judgment rendered in the *first* action brought because "we have no warrant for assuming that the aberrational judgment will not come as the first in the series." (Currie, *supra*, p. 289.) Currie therefore concluded that absent mutuality, collateral estoppel should not be applied where a defendant potentially faces more than two successive actions. (Currie, *supra*, p. 308.) However, as pointed out by the Oregon Supreme Court in *State Farm Fire & Cas. Co.* v. *Century Home Compon., Inc., supra,* 550 P.2d 1185, several courts have rejected Currie's solution to the multiple-claimant anomaly in situations where the *first* judgment is adverse to the defendant and have applied collateral estoppel to preclude a defendant from relitigating multiple claims where the defendant had the incentive and complete opportunity to contest the issue fully in the first action. (*Zdanok* v. *Glidden Company, Durkee Famous Foods Division* (2d Cir. 1964) 327 F.2d 944, 956, disapproved on other grounds *Local 1251 Int. U. Of U.A., A. & A.I.W.* v. *Robert Shaw Controls Co.* (2d Cir. 1968) 405 F.2d 29; *United States* v. *United Air Lines, Inc.* (E.D. Wash. 1962) 216 F.Supp. 709, 728, affd. *sub nom. United Air Lines, Inc.* v. *Wiener* (9th

where all of the injuries arose out of the same accident the plaintiffs theoretically could have joined in the same action.) The Supreme Court then declared that since the petitioners had every incentive to litigate the SEC lawsuit fully and vigorously, the judgment in the SEC action was not inconsistent with any previous decision, and the same procedural opportunities were available in the SEC and the current action, the offensive use of collateral estoppel was proper.

None of the cases discussed so far (*Parklane Hosiery Co.* v. *Shore, supra,* 439 U.S. 322; *Louie Queriolo Trucking, Inc.* v. *Superior Court, supra,* 252 Cal.App.2d 194; and *Lea* v. *Shank, supra,* 5 Cal.App.3d 964) involved actions arising out of different transactions as so often happens in products liability cases.

*Hardy* v. *Johns-Manville Sales Corp.* (5th Cir. 1982) 681 F.2d 334, however, does involve multiple product transactions and applies the *Parklane* "inconsistent verdict" principle. *Hardy* was an asbestos related products liability action involving several defendants. The district court applied collateral estoppel against certain defendants based on a prior action against various manufacturers of insulation products containing asbestos. (*Borel* v. *Fibreboard Paper Products Corporation* (5th Cir. 1973) 493 F.2d 1076.)[8] The circuit court ruled the trial court had erred in applying collateral estoppel to the defendants who were defendants in the prior litigation since the prior judgment was inconsistent with other previous judgments in similar suits. The court declared: "there is a second, equally important, reason to deny collateral estoppel effect [to the prior judgment]: the presence of inconsistent verdicts. In *Parklane Hosiery* v. *Shore* [*supra*], the Court noted that collateral estoppel is improper and 'unfair' to a defendant 'if the judgment relied upon as a basis for the estoppel is itself inconsistent with one or more previous judgments in favor of the defendant.' [Citations.] Not only does issue preclusion in such cases appear arbitrary to a defendant who has had favorable judgments on the same issue, it also undermines the premise that different juries reach equally valid verdicts. *See Restatement (Second)—Judgments* § 29, comment *f* (1982). One jury's determination should not, merely because it comes later in time, bind another jury's determination of

Cir. 1964) 335 F.2d 379, 404, cert. dism. 379 U.S. 951 [13 L.Ed.2d 549, 85 S.Ct. 452]; *Hart* v. *American Airlines, Inc.* (1969) 61 Misc.2d 41 [304 N.Y.S.2d 810, 814-815], contra, *Price* v. *Atchison, T. & S. F. Ry. Co.* (1958) 164 Cal.App.2d 400 [330 P.2d 933]; *Nevarov* v. *Caldwell* (1958) 161 Cal.App.2d 762 [327 P.2d 111].)

Furthermore, Currie himself retreated from his original position by later asking rhetorically: ". . . so long as we retain sufficient faith in the institution of trial by jury to retain it for civil cases at all, what warrant is there for mistrusting the verdict for purposes of collateral estoppel when there is no suggestion that there has been compromise or other impropriety?" (Currie, *Civil Procedure: The Tempest Brews* (1965) 53 Cal.L.Rev. 25, 36.)

[8]In *Borel,* the jury in part found that the defendants had failed to provide adequate warning on their products and that the defendant's products had been a cause of Borel's injuries. Borel was awarded $58,534.04 in damages. (493 F.2d at pp. 1086, 1093.)

an issue over which there are equally reasonable resolutions of doubt." (681 F.2d at pp. 345-346.)

Although *Parklane Hosiery Co.* and *Hardy* v. *Johns-Manville* involved federal court trials, we believe the principles articulated therein concerning the effect of inconsistent verdicts on the application of collateral estoppel are equally pertinent to state court actions. As noted by the Oregon Supreme Court in *State Farm Fire & Cas. Co.* v. *Century Home Compon., Inc., supra,* 550 P.2d at page 1191: "Those courts and commentators which have considered the question are in virtually unanimous agreement that where outstanding determinations are actually inconsistent on the matter sought to be precluded, it would be patently unfair to estop a party by the judgment it lost. . . .

"We agree with the commentators to the extent at least that, where there are extant determinations that are inconsistent on the matter in issue, it is a strong indication that the application of collateral estoppel would work an injustice. There seems to be something fundamentally offensive about depriving a party of the opportunity to litigate the issue again when he has shown beyond a doubt that on another day he prevailed." (Fn. omitted.)

The San Joaquin County jury verdict (Smith v. John Deere Company et al. (Super. Ct. San Joaquin Co., No. 146978)) is inconsistent with the Demanes verdict on the design defect question.[9] In that case, the jury apparently accepted Deere's theory why its machine should not have a cutoff switch at ground level and returned a defense verdict. A judgment was entered on the jury verdict on December 28, 1982, and the plaintiff's motion for a new trial was denied on February 10, 1983.

The question whether a product has a design defect normally is one of fact. (BAJI No. 9.00.5 (6th ed. 1981 pocket pt.); *Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 426-432 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1].) Until such time as the judgment in Smith v. John Deere Company is set aside on appeal or otherwise vacated, the resolution of the design defect issue in Deere's favor supports "the premise that different juries reach equally valid verdicts" (*Hardy* v. *Johns-Manville Sales Corp., supra,* 681 F.2d at pp. 345-346, citing Rest.2d, Judgments, § 29, com. f) and forecloses giving preclusive effect to the Demanes judgment in the present case.

---

[9]We take judicial notice of the proceedings in Smith v. John Deere Company pursuant to Evidence Code sections 452 and 459. Although the jury trial in Smith v. John Deere had not been held when the present case was before the court below, in deciding whether to grant extraordinary relief before trial we view the facts as they exist today.

The writ is denied.

Andreen, J., and Stanton, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.