[No. B033648. Second Dist., Div. Five. Nov. 29, 1989.]

RICHARD S. McCLAIN, Plaintiff and Appellant, v.
RICHARD W. RUSH et al., Defendants and Respondents.

**COUNSEL**

Hahn & Hahn, Carl J. West and Dale Robert Pelch for Plaintiff and Appellant.

Allen & Allen, David L. Allen and Stewart J. Schwartz for Defendants and Respondents.

OPINION

SUTTON, J.*—No flippancy is intended, but all are familiar with the old adage of "going to the well too often." This is a case where plaintiff and appellant, Richard S. McClain (McClain or vendee) did not "go to the well often enough" before purchasing the real property here involved. Had he done so he may have timely discovered the well on the property produced water too "hard" to be potable or to use otherwise, since the well water from the property seemed to stunt or kill vegetation when it was used for irrigation.

Judgment for defendants and respondents is affirmed.

The record before the court consists of a reporter's transcript of the hearing on a motion for judgment on the pleadings formally noticed and conducted on the eve of trial.

Appellant has submitted, per California Rules of Court, rule 5.1, an appendix in lieu of a clerk's transcript. For convenience that appendix will be referred to as the clerk's transcript. Respondents have submitted an appendix, also, which will be referred to as the respondents' appendix in order to provide a distinction.

Suit was initiated by McClain in 1983 by the filing of a six-count complaint. Defendants Richard W. Rush and Patricia Rush (the Rushes or vendors) were the owners and sellers of a parcel of real property at 28206 San Martinez Grande Canyon in Saugus (the property). Vendee's causes of action against vendors are set forth in the first two counts of the complaint, and suit was brought against vendors for rescission based upon a breach of contract and for fraud, misrepresentation, and failure of consideration.

Security Pacific National Bank (Bank) was the lender who financed vendee's purchase of the property, and the Bank was sued in the third cause of action for failure of consideration, the fourth cause of action for breach of contract, and in the fifth cause of action for negligence.

Defendant Seely is alleged to have been the vendee's real estate agent; defendant Griffin was alleged to be vendor McClains' real estate sales agent; both sales agents are alleged to have been in the hire of Century 21 New-hall-Valencia Realty (broker), an alleged California corporation which is presumed to be a licensed real estate brokerage corporation, although that

---

* Assigned by the Chairperson of the Judicial Council.

fact is nowhere alleged in the complaint. Collectively, these parties will be referred to as "the realtors."

The significant issue in this appeal centers around the applicability of a statute of limitations so that in a recital of the facts of the case it is important to note the specific dates of certain events. The formal deposit receipt agreement which initiated the real estate transaction appears to be undated, but was alleged to have resulted in the formation of a contract for the purchase and sale of the property on September 15, 1979. The deed from vendors for the property to vendee was recorded January 11, 1980, a date customarily concurrent with close of the parties' sales escrow. Formal notice of rescission of the purchase of the property from vendee to vendors and to the Bank is dated March 17, 1983, three years two months and some six days subsequent to the close of escrow.

Vendee filed the complaint herein March 28, 1983. On May 23, 1983, vendors answered the complaint with a general denial and several affirmative defenses, the third of which alleged that McClain's action against the vendors was barred by Code of Civil Procedure section 338, subdivision (d), the statute of limitations for fraud or mistake.

No copy of the answer of the realtors has been included in the clerk's transcript, but the summary judgment motion of realtors which is included in the clerk's transcript states that an answer was filed by them in June of 1983, asserting, among other things, that McClain's action against the realtors was barred by Code of Civil Procedure section 338, subdivision (d), as well as Code of Civil Procedure section 339, subdivision 1—the two-year statute of limitations based on an oral contract.

The bulk of the clerk's transcript in this case consists of the realtors' summary judgment motion and supporting documents and the opposition of McClain. Because the summary judgment obtained by realtors looms large in the subsequent grant of vendors' motion for judgment on the pleadings, certain of the facts established in that summary judgment motion merit comment. McClain unquestionably knew on March 6, 1980, from a report solicited and received from Sears that his water was "too hard" for any water softening system sold by Sears to accommodate, and Sears advised him of its inability to recommend use of any of Sears's systems to treat the well water on the property. As far as the problem of "fraud or misrepresentation" relating to the reduced flow of water from the well, the summary judgment motion established that vendee admitted voicing his complaint in that regard to vendors as early as January 25, 1980—a matter of a few days following close of escrow.

In response to the two facts cited, as well as other salient facts, the summary judgment motion persuasively established an almost immediate dissatisfaction with and knowledge of the "defects" in the well water on the part of McClain immediately following the conclusion of his purchase of the property on or about January 11, 1980. However, McClain's response to the summary judgment motion was that he was unaware the well water was not fit for human consumption "because of chemical contamination" until he had received, in response to his own solicitation, a water analysis on September 22, 1982, from Fruit Growers Laboratory which demonstrated that both before and after water softener application the chemical content of the well water made it generally unfit.

The realtors' summary judgment motion was granted against McClain on July 27, 1984. In the minute order granting the summary judgment motion before execution of the formal judgment, the court observed: "Summary judgment is granted as there are sufficient facts that are uncontradicted which indicate that knowledge of the defects [in the water] were known by the plaintiff in 1979 or February of 1980 and the statute of limitations applies."

Judgment for the realtors by the same minute order was stated to have been read into the record on July 27th and the word "proposed" stricken from a judgment submitted by the moving party with the motion; however, no such document appears in the record. Instead, a judgment dated August 10, 1984, appears to have been signed (or "re-signed") by the trial court and entered. In any event, an appeal was taken therefrom. In July of 1986 vendee filed with the superior court a dismissal with prejudice as to the realtors and in a separate document filed here, set forth in the appendix to vendors' respondents' brief a notice to this court from McClain's attorneys was filed contemporaneously with the dismissal indicating McClain would not proceed further with the appeal against the realtors. The notice indicated, however, the appeal against the Bank would still be pursued. No documents relating to a summary judgment by the Bank against McClain are included in the clerk's transcript but reference is made in vendors' brief that the summary judgment in favor of the Bank was affirmed on appeal.

Thus, the Rushes remained in the action as the only defendants up to the time of trial. In early March of 1988, some three weeks or so prior to "the five-year bar" and in probable compliance with the Los Angeles County Civil Trials Manual rules for pretrial, and particularly rule 13.11 thereof, vendors' counsel formally noticed a pretrial notion for judgment on the pleadings or alternatively (pursuant to Code Civ. Proc., § 597) a motion to try separately the vendors' statute of limitations defense. The vendors also formally noticed an *in limine* motion to exclude parol evidence "enlarging"

the terms of the contracts between vendors and vendee. In vendors' appendix, the vendors have submitted a copy of the pertinent escrow instructions which they claimed constitutes an integrated agreement with the original deposit receipt agreement. After extensive arguments on the motions the court received into evidence as exhibit 1 the deposit receipt agreement, and as exhibit 2 the escrow instructions previously identified.

The court granted vendors' motion for judgment on the pleadings as to the first cause of action "on the basis of the res judicata issue as covered in the defendants' pleading and . . . defendants' moving papers and oral argument. And secondly, on the statute of limitations as it [was the court's] view that it was not tolled and had run by the time of the filing of the complaint." The trial court reasoned that the deposit receipt agreement and escrow instructions constituted an integrated contract, in writing, and that parol evidence would not be admitted to vary the terms of the integrated written agreement. The court ruled further that if there was any oral contract between the parties not otherwise contained in the integrated written agreement, such oral agreement would necessarily have been barred by application of the two-year statute of limitations thereto. (Code Civ. Proc., § 339, subd. 1.)

Thus, elimination of the two remaining causes of action in the contract against the Rushes has resulted in this appeal by McClain.

McClain contends it is a misapplication of the doctrines of collateral estoppel and/or res judicata to use the real estate agents' summary judgment in aider of vendors' motion for judgment on the pleadings because the issues determined in the realtors' summary judgment motion differed from and were not identical to the issues presented in vendors' motion for judgment on the pleadings; that the summary judgment in favor of the real estate agents "was not final" which made the application of the doctrines of collateral estoppel and res judicata improper; and, that it would be unjust and iniquitous to apply res judicata or collateral estoppel doctrines to the Rushes' case. McClain also asserts it was error to refuse to have allowed McClain leave to amend his complaint (three weeks before trial thereon would have been barred) to enable McClain to plead a tolling of the statute of limitations, and the trial court's refusal to allow such amendment was an abuse of discretion. Finally, McClain asserts the "contract" was not fully integrated and it was reversible error to have excluded parol evidence.

The claim of error by McClain that collateral estoppel should not apply in this case is misplaced. Respondent cites the case of *Sandoval* v. *Superior Court of Kings County* (1983) 140 Cal.App.3d 932 [190 Cal.Rptr. 29]. Procedurally, the steps taken in *Sandoval* are substantially identical to this

case—realtors, here, obtained a favorable summary judgment; plaintiff appealed; settlement was reached; and a dismissal with prejudice against realtors was filed with the trial court. The same steps were taken in *Sandoval,* except in *Sandoval,* plaintiff's judgment based on a jury verdict was appealed by the real party in interest, instead of appeal being taken from a defense summary judgment, as here. In the *Sandoval* case, footnote 3 (*Sandoval, supra,* 140 Cal.App.3d at p. 939) noted the same procedural irregularity that occurred here. ■ While an appeal pends, before remittitur, jurisdiction is solely vested in the appeals court. Code of Civil Procedure section 581 makes no provision for dismissal in the trial court following final (albeit, summary) judgment. Dismissal of an appeal simply bars a successive appeal on the same subject. Remittitur must issue and the trial court must be revested with jurisdiction before any dismissal would be valid. Here, since the realtors obtained a favorable summary judgment, upon eventual remittitur, nothing further needed to be done—the realtors' favorable judgment would then have become final and unassailable. A dismissal with prejudice of the realtors could have added nothing to the status of the realtors as the vindicated prevailing parties. Otherwise, should remittitur issue in a case like *Sandoval* or in this case where settlement was negotiated and executed during the pendency of an appeal, should a remittitur still be issued for any reason thereafter, the appropriate document to file in the trial court, following remittitur, would be a satisfaction of judgment and not a dismissal. The idea of filing a dismissal after the rendition of a judgment is an anomaly.

■ Because vendors' appendix makes it manifestly clear in this case settlement on undisclosed terms between McClain and realtors was reached and the appeal against the realtors was abandoned, in order to sort through the procedural anomalies presented here it would have to be said merely as a matter of logic until final remittitur on the Bank's appeal was rendered, the abandoned appeal against the realtors would have remained in a sort of appellate limbo. However, upon eventual remittitur, as occurred with the appeal against the Bank, as a matter of law, the trial court would have been fully revested with jurisdiction over the parties to the former appeals and, as to the realtors, the favorable summary judgment rendered in their favor would have become final for all purposes, including the applicability of that final judgment in future res judicata or collateral estoppel situations.

This correct analysis obviates the need to comment further on the effect of any "judgment of dismissal" which might have resulted when the purported dismissal of the realtors was filed without the real authority to do so. In actuality, the filing of the dismissal was an idle but no doubt comforting act. The real disposition of the controversy between McClain and realtors

was presumably obtained through the device of a mutual release which prudent practice would have required.

The shortcomings of the record are heightened by the fact there is no documentation whatsoever concerning the Bank's appeal, but vendors' brief asserts McClain's appeal against the Bank resulted in the affirmance of the Bank's favorable summary judgment. It must be presumed in the ordinary course of events remittitur from this court followed before the trial which was set between McClain and the Rushes could have been set, since the trial could not have proceeded otherwise. At such point in time both summary judgments in favor of the realtors and the Bank would have been "final" but for the requirements of Code of Civil Procedure section 437c. "Except where a [final] separate judgment may properly be awarded in the action, no final judgment may be entered on a motion for summary judgment prior to the termination of [the] action. But the final judgment in such action must, in addition to any matters determined therein, award judgment as established by the summary proceeding set forth by statute." (40 Cal.Jur.3d, Judgments, § 43, p. 391.)

The judgment from which this appeal is taken was based solely on the grant of vendors' motion for judgment on the pleadings to the last two remaining causes of action against the Rushes. If it purported to be a judgment final for all purposes, the judgment submitted for execution after grant of the motion for judgment on the pleadings should have recited (but did not) that previous summary judgments in favor of the Bank and the realtors had been granted.

Considered in this light, but without so deciding, it would appear no comprehensive final judgment was ever rendered in this case since the various causes of action were dispatched piecemeal as to the three sets of defendants in the two motions for summary judgment and the motion for judgment on the pleadings. The judgment on the grant of the motion for summary judgment would have necessarily had to be executed and entered by the court, however, or no appeal could have been taken from such a judgment. There is included in the record such a judgment in the realtors' favor. But any such judgment in favor of the Bank is missing from the record.

This case also squarely confronts the same issue faced by the court in *Sandoval, supra,* 140 Cal.App.3d 932 et seq., where here as well as in *Sandoval,* there may have been no "final judgment" for purposes of applying the doctrine of res judicata. This does not mean, however, that sufficient finality "for issue preclusion purposes" did not exist so that any attempted

retrial of the statute of limitations issue would properly allow the bar of collateral estoppel to apply.

Quoting the Restatement Second of Judgments, the *Sandoval* case stated: "The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of issue preclusion (as distinguished from merger and bar), 'final judgment' includes any prior adjudication of an issue in another action that is determined to be *sufficiently firm to be accorded conclusive effect.*" (Rest.2d Judgments, § 13, italics added.) This section "makes the general common sense point that such conclusive carry-over effect should not be accorded a judgment which is considered merely tentative in the very action in which it was rendered. On the contrary, the judgment must ordinarily be a firm and stable one, the 'last word' *of the rendering court*—a 'final' judgment." (*Id.,* § 13, com. *a,* italics added.)

At the point in time the trial court ruled on the motion for judgment on the pleadings there was nothing whatsoever that was remotely tentative about the summary judgment affirmed in the Bank's favor after the "settlement" with the realtors. As above analyzed, upon the inevitable remittitur the Bank's successfully affirmed summary judgment became final—or at least, no further question could be raised concerning it. The doppelganger effect such remittitur had on the realtors' summary judgment effectively reinstituted the trial court's judgment as the final word on the realtors' position in the case, and such position could no longer be seriously questioned as to its portent or meaning.

Therefore, for purposes of "issue preclusion" in the motion for judgment on the pleadings, McClain was properly prevented from any reconsideration of the statute of limitations question by the appropriate application of the collateral estoppel doctrine. Many useful documents may have been omitted from the record, but the one determinative document which has been included is the July 27, 1984, minute order which established that McClain knew in 1979 or February of 1980 of the (water well's) defects and that the statute of limitations applies. "The *opinion of the trial judge* in the prior case is relevant extrinsic evidence which may be looked to in determining the scope of the judgment. [Citing *Tevis* v. *Biegel* (1957) 156 Cal.App.2d 8 [319 P.2d 98]; *Carrol* v. *Puritan Leasing Co.* (1978) 77 Cal.App.3d 481, 491 [143 Cal.Rptr. 772]; 46 Am.Jur.2d, Judgments, § 608.]" (7 Witkin, Cal. Procedure (3d ed. 1985) Judgments, § 256, p. 694.)

■ The matrix for determining whether the collateral estoppel doctrine can be invoked is that: "A second action between the same parties on a *different cause of action* is not precluded by a former judgment. . . . But the first judgment 'operates as an *estoppel* or *conclusive adjudication* as to

such issues in the second action as were *actually litigated and determined in the first action.*' " (7 Witkin, Cal. Procedure (3d ed. 1985) Judgments, § 253. p. 691 [Witkin, in the last reference cited, also notes, historically, the first Restatement of Judgments utilized the term "collateral estoppel." The second Restatement of Judgments substitutes the term "issue preclusion" for collateral estoppel].)

Code of Civil Procedure section 1908.5 also provides: "When a judgment or order of a court is conclusive, the judgment or order must be alleged in the pleadings if there be an opportunity to do so; if there be no such opportunity, the judgment or order may be used as evidence."

■ Obviously, then, the trial court's opinion voiced in the July 27, 1984, minute order was relevant, extrinsic evidence of the issue of the applicability of the statute of limitations and the order itself is also evidence of the court's intent, both of which are appropriate to establish collateral estoppel against McClain by the Rushes from McClain's relitigating the statute of limitations question.

The application of the foregoing precepts to the case at bar shows the statute of limitations defense was successfully asserted by realtors (who were alleged to be and were in fact agents for vendors). McClain was an adversary of the realtors, the Bank and the vendors at all times in the case as Code of Civil Procedure section 1910 requires as a prerequisite to the application of res judicata or collateral estoppel. The August 10, 1984, judgment on the summary judgment of realtors became final for purposes of "issue preclusion" when remittitur in the bank's appeal occurred, although no formal final judgment may thereafter have been entered on either summary judgment which could have allowed resort, without question, to the res judicata doctrine. Even if no formal final judgment was ever so rendered, the lack of any rendition thereof is not relevant to the applicability of the doctrine of collateral estoppel to prevent relitigation of the trial court's final application of the statute of limitations in vendors' favor, which was correctly adapted from the 1984 opinion of the trial court and embodied, as evidence of such, in the minute order previously made on July 27, 1984.

No credence may be given McClain's appellate concern of surprise in vendors' reliance on the statute of limitations. This was an originally pleaded affirmative defense and McClain had notice of the vendors' contentions in this regard from the time their answer was filed in May of 1983.

■ If McClain had wished to avoid vendors' assertion of the statute of limitations by amending his complaint to allege their periodic absences from California which "periodically tolled" (and thus extended) the period of

limitations, the time for McClain to have done so would have been shortly after July of 1984 when vendors' agents, the realtors, successfully asserted that defense, which resulted in a favorable summary judgment on the realtors' behalf. It was no abuse of discretion on the trial court's part to refuse McClain authority to amend to attempt such a showing on the literal eve of trial. More to the point: to have rewarded the dilatoriness of McClain by permitting such 11th-hour amendment would have probably have been an abuse of discretion had vendors been in any way disaffected by it.

█ Thus, as to the first cause of action against vendors for fraud, the three-year statute of limitations (Code Civ. Proc., § 338, subd. (d)) barred recovery. As to the second cause of action, for breach of contract, the trial court concluded the contractual duty of the Rushes to McClain was limited by the express terms of any contract between them (whether that be by the deposit receipt agreement or the escrow instructions, or both) to a certification of the capacity of the well on the property, and nothing more. Thus, any "contract" between vendors and the Bank (for McClain's benefit or otherwise) of necessity had to be an oral contract if the subject of that oral contract was submission of an acceptable water quality report. Any contract between vendors and McClain to supply the report to the Bank would likewise not have been written. No convincing offer of proof as to what would be the content of any such oral contract appears to have been made, but, as correctly noted by the court, it would nonetheless have been barred by the two-year period of limitations (Code Civ. Proc., § 339, subd. 1).

*Television Adventure Films Corp.* v. *KCOP Television, Inc.* (1967) 249 Cal.App.2d 268, 278 [57 Cal.Rptr. 526] seems to say that commencing suit for fraud and breach of oral contract three years after the events complained of bars the fraud action and by inclusion within the three-year period, the cause of action on the oral contract, as well.

*King* v. *Stanley* (1948) 32 Cal.2d 584, 588 [197 P.2d 321] in substance states a sufficient written memorandum for the sale of property to satisfy the statute of frauds (Civ. Code. § 1624, subd. (d)) may be found in one paper or several documents.

No document in addition to the deposit receipt agreement and escrow instructions was ever offered by any party to the action as a part of the agreement by vendors to sell and the vendee to buy the property.

█ Whether intended to be integrated or not the only documents of purchase and sale were the deposit receipt and the escrow instructions, neither of which expressly made reference to anything about the well except its capacity. If any oral contract existed dehors either or both written

agreements, integrated or not, failure to have brought suit within two years thereon was fatal if the oral agreement would have varied the terms of both agreements, i.e., added another covenant to have a report of the quality of the water submitted before escrow closed. To have permitted such evidence would be violative of Civil Code section 1625, the parol evidence rule, and the exclusion of such evidence was proper.

The judgment is affirmed.

Lucas, P. J., and Boren, J., concurred.