Filed 8/18/22  In re A.C. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| In re A.C., a Person Coming Under the Juvenile Court Law. | C094807 |
| BUTTE COUNTY DEPARTMENT OF EMPLOYMENT AND SOCIAL SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> D.C. et al., <br><br> Defendants and Appellants. | (Super. Ct. No. 21DP00083) |

D.C. is the half-brother of the minor's mother.  He is married to K.C.  The juvenile court denied the requests of K.C. and D.C. for appointed counsel and de facto parent status (Welf. & Inst. Code, § 395),[1] and they appeal.  D.C. joins in, and adopts, the appellate contentions asserted by K.C.  Finding no error, we will affirm the juvenile court's orders.

_____

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

K.C. filed three previous and related appeals: one from an order issued by the juvenile court in Siskiyou County (*In re A.C.* (Mar. 22, 2022, C093887) [nonpub. opn.], review denied June 15, 2022) and two from orders issued by the juvenile court in Butte County (*In re A.C.* (Mar. 24, 2022, C094217) [nonpub. opn.] & *In re A.C.* (C094859), dismissed Mar. 28, 2022). We take judicial notice of the record in each of K.C.'s related appeals, as well as this court's prior orders and opinions in these cases. (Evid. Code, § 452, subd. (d).)

The minor's mother (hereafter mother) had an extensive child welfare history and reportedly did not feel she could provide for the minor. Because K.C. was willing to care for the minor, mother stated she intended for the minor to live with K.C. and D.C. K.C. arrived at the hospital shortly after the minor was born and was permitted to take the minor pursuant to a safety plan prohibiting D.C. from living in the family home due to his substance abuse, mental health concerns, and criminal history. The probate court in Siskiyou County subsequently issued an ex parte order appointing K.C. the temporary guardian of the minor, but a social worker informed K.C. that the Siskiyou County Health and Human Services Agency (Agency) would not support K.C.'s request for guardianship and would be seeking to place the minor into protective custody. (*In re A.C., supra*, C094217.)

At a detention hearing, the juvenile court in Siskiyou County appointed counsel for K.C. Later, at a continuation of the hearing, K.C. said she considered herself to be the minor's mother. She said she had been told that if the father was unknown and she treated the minor as her own she could complete a voluntary declaration of parentage (VDOP) form. She obtained a VDOP form, had mother's signature notarized, and mailed the signed form to the Department of Child Support Services. K.C. said there was an upcoming hearing on her request for guardianship and she hoped to become the minor's permanent guardian. But the juvenile court ordered the minor detained, finding among

other things that continuance of the minor in the home of K.C. was contrary to the minor's welfare. (*In re A.C., supra*, C094217.)

Daniel R. (Daniel) came forward and said he was the biological father of the minor. He appeared at the contested jurisdiction hearing and testified that he recently signed a VDOP. Over K.C.'s objection, the juvenile court declared Daniel the presumed father and appointed counsel for him. Mother and Daniel indicated their willingness to participate in reunification services and mother requested that the case be transferred to her home county of Butte in order for her to participate in services and that the minor be placed in an ICWA-approved home.[2] (*In re A.C., supra*, C094217.)

When the social worker informed K.C. of the intent to transfer the case to Butte County, K.C. expressed her concern that the minor would be placed in another county and stated, " 'I have paperwork of Daniel and [mother] giving me full custody.' " K.C. continued, " 'I am [the minor's] legal parent and so is [mother] but she and Daniel have both given us full custody in the guardianship and in the custody case as well. I have been in [the minor's] life since before she was born. My husband and I are doing all we can to bring her back home.' " K.C. and D.C. requested that the minor be returned to their care. (*In re A.C., supra*, C094217.)

The social worker spoke with a representative of mother's tribe, who requested that the case be transferred to Butte County and that mother and Daniel be given reunification services. The Agency recommended the same and noted that, in the event reunification efforts failed, the permanent plan was "adoption or a Tribal Customary Adoption with a tribal member." The proposed case plan included services for mother and Daniel but not for K.C. (*In re A.C., supra*, C094217.)

---

[2] Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.).

At the continuation of the contested jurisdiction hearing, the juvenile court noted the temporary guardianship had terminated, so K.C. no longer had the rights of a guardian. The juvenile court also determined K.C.'s VDOP was not valid and that the law did not support K.C.'s argument that she was a legal parent. The juvenile court denied K.C.'s request to vacate its prior finding that Daniel was a presumed father. (*In re A.C., supra*, C094217.)

The juvenile court turned next to jurisdiction and disposition and allowed K.C. and her counsel to cross-examine witnesses and provide the testimony of D.C. Counsel for K.C. was also permitted to present argument. The juvenile court declared the minor a dependent of the court and adopted the Agency's recommended findings and orders as modified on the record. (*In re A.C., supra*, C094217.)

K.C. filed a request for de facto parent status, and the matter was set for hearing on March 22, 2021. In the meantime, the juvenile court ordered the State of California Department of Public Health, Vital Records to correct the minor's birth certificate by removing K.C.'s name and reflecting only mother's name under the "Name of Parent" portion of the certificate, and providing the minor's correct full name, date of birth, and place of birth. (*In re A.C., supra*, C094217.)

On March 22, 2021, the juvenile court conducted a hearing on the parties' request to transfer the matter to Butte County and on K.C.'s request for de facto parent status. K.C. was present with her counsel. The juvenile court ordered the case transferred, including the de facto parent request. (*In re A.C., supra*, C094217.)

On May 27, 2021, the juvenile court in Butte County conducted a transfer-in hearing. Present at the hearing was mother, the Butte County Department of Employment and Social Services (Department), the social worker, counsel for the Mooretown Rancheria Tribe (Tribe), K.C., and D.C. K.C. informed the juvenile court of her understanding that her de facto parent request was still pending, and she requested appointment of counsel. The juvenile court said it was not required to appoint counsel

4

for a de facto parent but had the discretion to do so.  The juvenile court continued K.C.'s requests for appointment of counsel and de facto parent status and accepted transfer-in of the case from Siskiyou County.  (*In re A.C., supra*, C094217.)

On June 17, 2021, the juvenile court continued the matter for a contested hearing. K.C. again requested appointment of counsel, and the juvenile court denied the request. K.C. appealed from the juvenile court's denial of her request for appointment of counsel. This court affirmed the juvenile court's order and the remittitur issued on March 24, 2022.  (*In re A.C., supra*, C094217.)

The juvenile court heard K.C. and D.C.' requests for de facto parent status on August 31, 2021.  The Department opposed the requests, arguing K.C. and D.C. did not satisfy the requirements for de facto parent status, and they contributed to the dependency of the minor by failing to abide by the safety plan as instructed.  The Tribe and the minor agreed.

K.C. testified in support of her request, stating the minor lived with her for two months until the minor was removed pursuant to the dependency.  K.C. testified she "preplanned to be [the minor's] mother" before the child was born, took the minor home from the hospital, treated and held the minor out as her own, chose the name for the minor, and did everything she could to be a good mom to the minor.  After the minor was removed, K.C. appeared at every court hearing, attended visits when allowed, and did everything in her power to be a part of the minor's life.  K.C. testified she loved the minor and treated the minor as her own child.

K.C. acknowledged the minor was released into her care subject to a safety plan which prohibited D.C. from living in her home, and she conceded the minor was removed based on the Department's allegation that she violated that safety plan.  K.C. also conceded that the reason for the safety plan was past domestic violence involving D.C. and D.C.'s criminal history.  She denied allowing D.C. to live in her home, but admitted she allowed D.C. to have contact with the minor.  K.C. testified she had a considerable

5

amount of knowledge about the minor's family and history but conceded that knowledge was available to the Department. She acknowledged the minor had been out of her care for approximately 10 months, during which time much had happened with respect to the minor. K.C. further conceded that the Siskiyou County juvenile court previously determined she did not qualify as a presumed parent and denied her request for presumed parent status.

D.C. testified he took the minor in and held her out and treated her as his daughter. He stated, "From the day that little girl was born, I haven't seen her as anything other than my own child." He explained that the minor was only in his care for two weeks before he entered a treatment program but, while he was in treatment, the minor lived with K.C. in the home he owned. D.C. denied he was also living in the home, claiming he was living in his truck.

The juvenile court said it had reviewed and considered the case file from Siskiyou County and it took judicial notice of those documents. After hearing argument from the parties, the juvenile court noted it was mindful of the requirements for de facto parent status. The juvenile court reviewed the safety plan, found that it was not followed, and noted the noncompliance was one of the reasons the minor was detained. The juvenile court denied the requests for de facto parent status.

DISCUSSION

I

K.C. and D.C. contend the ultimate reversal of juvenile court orders in related case Nos. C093887 and C094217 will require reversal of all subsequent orders, including the orders in this case denying K.C.'s request for appointment of counsel and K.C.'s request for de facto parent status. The contention lacks merit because case Nos. C093887 and C094217 did not result in the reversal of juvenile court orders, remittiturs issued in those appeals, and the judgments are final. (See *McClain v. Rush* (1989) 216 Cal.App.3d 18,

6

26 [issuance of remittitur after appeal renders judgment final and unassailable for all purposes, including collateral estoppel and res judicata].)

## II

K.C. and D.C. next contend the juvenile court abused its discretion when, at the hearing for de facto parent status, it denied their request for appointed counsel.

Section 317 provides that a court may appoint counsel for "a parent or guardian of the child" when that parent or guardian is "presently financially unable to afford and cannot for that reason employ counsel." (§ 317, subd. (a)(1).) Neither K.C. nor D.C. were parents, de facto parents, or guardians of the minor at the time of the hearing.

K.C. concedes she had not yet achieved de facto parent status at the time of the hearing but argues the juvenile court should nevertheless have appointed counsel for her for the limited purpose of establishing de facto parent status. However, K.C. does not cite authority that supports her assertion, and we are aware of none. Moreover, even for indigent defacto parents, the juvenile court maintains discretion to deny the appointment of counsel. (*In re A.F.* (2014) 227 Cal.App.4th 692, 705.) K.C. has not established error or an abuse of discretion.

As further support for the contention regarding appointment of counsel, K.C. argues the same circumstances she previously asserted in her prior appeals. We already determined those arguments lack merit.

## III

In addition, K.C. and D.C. contend the juvenile court erred in denying their request for de facto parent status. They claim the juvenile court improperly based its denial on the conclusion that they failed to follow the safety plan, but it did not weigh all the relevant factors.

" 'The concept of de facto parent has been judicially created to recognize limited rights in dependency cases for a person who has been found by the juvenile court to have assumed, on a day-to-day basis, the role of a parent, fulfilling the child's physical and

7

psychological needs. [Citations.] The decision to grant de facto parent status depends on an assessment of the particular individual and the facts of the case. [Citation.] The juvenile court applies the preponderance of the evidence standard in making its factual findings and we review those findings for an abuse of discretion.' " (*In re Justin O.* (2020) 45 Cal.App.5th 1006, 1015.)

Courts have identified several factors relevant to whether a person falls within the definition of a de facto parent. Those factors include whether "(1) the child is 'psychologically bonded' to the adult; (2) the adult has assumed the role of a parent on a day-to-day basis for a substantial period of time; (3) the adult possesses information about the child unique from the other participants in the process; (4) the adult has regularly attended juvenile court hearings; and (5) a future proceeding may result in an order permanently foreclosing any future contact with the adult. [Citations.] If some or all of these factors apply, it is immaterial whether the adult was the 'child's current or immediately succeeding custodian.' [Citations.]" (*In re Patricia L.* (1992) 9 Cal.App.4th 61, 66-67, fn. omitted; see *In re Bryan D.* (2011) 199 Cal.App.4th 127, 141; *In re Justin O., supra,* 45 Cal.App.5th at p. 1015.)

Here, the evidence presented by K.C. and D.C. was insufficient to meet the requirements for de facto parent status. As confirmed by K.C.'s and D.C.'s testimony, the minor was in K.C.'s custody and care for only two months and in D.C.'s care for several weeks. Once the minor was detained, K.C.'s only contact with the minor was during supervised visits. Neither of them demonstrated that, during that brief time, the minor became psychologically bonded to K.C. or D.C. Nor did K.C.'s testimony demonstrate that she assumed the daily role of the minor's parent for a substantial period of time. K.C. regularly attended court hearings, but the information K.C. and D.C. possessed about the minor was not unique. Additionally, K.C. conceded the minor was removed from her custody based on the Department's allegation, later sustained by the juvenile court, that she violated the safety plan put in place to address past domestic

8

violence involving D.C. and D.C.'s criminal history. While K.C. denied that D.C. was living in the home, she admitted she allowed him to have contact with the minor.

There was sufficient evidence that K.C. and D.C.'s behavior contributed to the dependency of the minor, and the juvenile court did not abuse its discretion in denying K.C. and D.C.'s request for de facto parent status.

K.C. and D.C. argue the juvenile court improperly relied on the violation of the safety plan and failed to weigh the relevant factors. But the record establishes that the relevant factors were discussed and considered. The juvenile court did not improperly add a disqualifying factor or misapply the law.

DISPOSITION

The juvenile court's orders are affirmed.

/S/<br>MAURO, J.

We concur:

/S/<br>HULL, Acting P. J.

/S/<br>KRAUSE, J.