Filed 6/5/26

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| MARK BAKER,<br><br>        Plaintiff and Appellant,<br>v.<br><br>BAY AREA TOLL AUTHORITY,<br><br>        Defendant and Respondent;<br><br>ILLUMINATE THE ARTS,<br><br>        Real Party in Interest. | A174642<br><br>(City & County of San Francisco<br>Super. Ct. No. CPF25519079) |

The Bay Lights 360 is the third iteration of an LED light art installation on the San Francisco Bay Bridge funded by real party in interest Illuminate the Arts (Illuminate). And this is the second iteration of litigation by Mark Baker challenging Bay Area Toll Authority's (BATA) approval of the project under the California Environmental Quality Act (CEQA) (Pub. Resources Code, § 21000 et seq.; see Pub. Resources Code, § 21050).[1]

In Baker's first lawsuit, the trial court entered judgment after sustaining BATA's demurrer based on the statute of limitations. Baker did not appeal, but filed this action founded on new allegations about a permit issued to implement the Bay Lights 360 project. BATA again demurred, and

---

\* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II(A) and II(C).

[1] Undesignated section references are to CEQA provisions codified in Public Resources Code sections 21000–21177.

the trial court sustained its demurrer without leave to amend, finding the new allegations did not restart the statute of limitations and Baker was precluded from relitigating the arguments resolved against him in the first action. We affirm.

## I. BACKGROUND

As alleged by Baker, the Bay Lights art installation began in 2012. In earlier versions of the project, LEDs were installed on the exterior of the Bay Bridge's suspension cables. Bay Lights 360 adds inward, driver-facing lights, approximately doubling the number of LEDs.

BATA is the CEQA lead agency for Bay Lights 360, and the California Department of Transportation (Caltrans) is a responsible agency.[2] Beginning in 2012, BATA filed notices of exemption declaring each iteration of the Bay Lights exempt from the requirements of CEQA. It filed a notice of exemption as to Bay Lights 360 in August 2023.

In October 2024, Caltrans issued an encroachment permit conditionally approving BATA's plan to install Bay Lights 360 and requiring a "conditional study and evaluation" of the inward-facing lights to determine whether they would adversely affect motorists. The encroachment permit stated that the interior lights must not be activated until a comprehensive safety test was developed and completed, and those lights must not be activated for testing

---

[2] "The lead agency is the 'public agency which has the principal responsibility for carrying out or approving a [CEQA] project . . . .' (§ 21067.)" (*Marina Coast Water Dist. v. County of Monterey* (2023) 96 Cal.App.5th 46, 59, fn. 10.) A "responsible agency" is another agency with responsibility for those functions. (§ 21069.) "The lead agency has a primary role in assessing whether an [environmental impact report] is required and in preparing and certifying the" report. (*Marina Coast Water Dist., supra,* 96 Cal.App.5th at p. 59, fn. 10.) "A responsible agency bears 'responsibility for mitigating or avoiding only the . . . environmental effects of those parts of the project which it decides to carry out, finance, or approve.' " (*Ibid.*, citations omitted.)

or display unless approved via a rider to the permit, which had not issued at the time Baker filed this action.

## A. Baker's First CEQA Action

Baker is "the President of the Soft Lights Foundation and advocates for the protection of individuals who are adversely impacted by LED light." In December 2024, he filed his original petition for writ of mandate and complaint against BATA (along with Caltrans and other agencies), seeking relief under CEQA and asserting other causes of action concerning Bay Lights 360. Baker alleged that BATA's 2023 notice of exemption was "unjustified" because Bay Lights 360 had not received "formal approval" and BATA and the other agencies had not completed a "full [environmental impact report] and CEQA analysis."

BATA demurred, including on the ground that Baker's CEQA claim was barred by the statute of limitations. In April 2025, the trial court sustained BATA's demurrer without leave to amend as to each of Baker's claims.[3] The court concluded that the CEQA claim was barred by both a 35-day statute of limitations triggered by the 2023 notice of exemption and a 180-day statute of limitations running from BATA's decision to approve or carry out the Bay Lights 360 project, which the court ruled was made "no later than early 2023." (§ 21167, subd. (d).) Judgment entered in the first action in May 2025. Baker did not appeal.

## B. The Present Lawsuit and the Trial Court's Ruling

Just after the trial court ruled in the first action, Baker filed the present action asserting a single CEQA claim against BATA. This time, his

---

[3] Baker's claims against Caltrans and another agency were resolved against him in the same order, and he voluntarily dismissed a fourth agency from the case.

allegations focused on the encroachment permit issued by Caltrans, which he claimed to have received in April 2025 through a public records request. Baker alleged that "[d]epending upon how it is designed and implemented, the safety study" described by the permit "itself has the potential to cause significant adverse impacts on the environment" that were "not acknowledged" in the 2023 notice of exemption; therefore, "testing of the lights must be recognized as a stand-alone project under CEQA—one that does not qualify for a categorical exemption." Baker sought a judgment declaring the safety study to be a discrete project for CEQA purposes and directing BATA to prepare an environmental impact report for *that* project.

BATA again demurred. It argued that the encroachment permit did not give rise to a new project for CEQA purposes or restart the statute of limitations for CEQA challenges to Bay Lights 360. Baker's claim remained time-barred—and he was barred from relitigating that issue by the preclusive effect of the trial court's ruling in the first action. In response, Baker revived his argument from the prior litigation that the 2023 notice of exemption "was filed without BATA ever having issued a Resolution approving the Project." He further argued that the encroachment permit "dramatically altered the scope" of the project so that a new environmental impact report was required and the 2023 notice of exemption was "moot."

The trial court sustained BATA's demurrer without leave to amend. The court found its prior determinations as to when the Bay Lights 360 project was approved for CEQA purposes and when the statute of limitations had expired were preclusive where Baker failed to appeal those rulings. The court also found that the encroachment permit and safety study concerned the existing Bay Lights 360 project, and Baker offered "no factual allegations demonstrating that th[e] study significantly changed the scope of the

4

Project." Neither the encroachment permit nor the study restarted the statute of limitations. The court entered judgment in favor of BATA in October 2025.[4]

## II. DISCUSSION

### A. *Motions and Requests*

Before turning to the merits of Baker's appeal, we address several motions and requests concerning the scope of the appellate record and other matters.

First, Baker's appendix includes documents filed in his first CEQA action against BATA, which is improper. (See *Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, 381 [appendix must be limited to documents filed in the matter under appeal], disapproved on another ground by *Vo v. Technology Credit Union* (2025) 108 Cal.App.5th 632, 647.) We accordingly grant BATA's motion to correct the record to exclude these documents. (Cal. Rules of Court, rule 8.155(c).) But many of the record documents from the first action are relevant to the issues raised in this appeal. We consider their existence and the trial court rulings they reflect by taking judicial notice of the following documents from the first action on our own motion: the complaint, BATA's demurrer, Baker's opposition to the demurrer, and the trial court's order sustaining the demurrer without leave to amend.[5] (Evid. Code, §§ 452, subd. (d), 459; *Aixtron, supra,* 52 Cal.App.5th at p. 382.) We also grant BATA's unopposed request for judicial notice of

---

[4] Baker filed his notice of appeal before judgment entered, but we exercise our discretion to treat the notice as if it were filed immediately after. (Cal. Rules of Court, rule 8.308(c).)

[5] The parties were invited to present information relevant to these judicially noticed items during oral argument. (Evid. Code, §§ 455, 459; see *Haydon v. Elegance at Dublin* (2023) 97 Cal.App.5th 1280, 1291, fn. 5.)

documents in Baker's appendix that were the subject of judicial notice by the trial court in the present action: the 2023 notice of exemption, the judgment in the first action, and the 2024 Caltrans encroachment permit. (Evid. Code, §§ 452, subds. (c) & (d), 459.)

We do not consider the uncertified administrative record prepared by Baker. While there is a process by which a CEQA plaintiff or petitioner may request to prepare the administrative record "by providing a notice of the election to the public agency," the record remains "subject to certification of its accuracy by the public agency" within the deadline provided by the statute. (§ 21167.6, subd. (b)(2).) The public agency may also deny the plaintiff's request, which BATA did here. (*Id.*, subd. (b)(3).) The administrative record prepared by Baker is not properly before us.

We deny Baker's November 2025 request for judicial notice of emails and a news article from the uncertified administrative record, which were not otherwise presented to the trial court. (See *In re Kenneth D.* (2024) 16 Cal.5th 1087, 1106 [" ' "Reviewing courts generally do not take judicial notice of evidence not presented to the trial court" absent exceptional circumstances' "].) We likewise deny Baker's motion to augment the record to include a CEQA re-validation form concerning Bay Lights 360 dated July 2023 and a rider to the Caltrans encroachment permit dated September 2025. (See *ibid.* [" '[a]ugmentation does not function to supplement the record with materials not before the trial court' "]; Cal. Rules of Court, rule 8.155(a)(1) [authorizing motion to augment the appellate record to include documents filed or lodged in the trial court].) In any case, none of these new documents are ultimately relevant to the issues we decide below.

We deny Baker's motion for leave to file a supplemental opening brief raising a new argument about the facial validity of the 2023 notice of

exemption.  Baker fails to cite legal authority to support his argument that BATA's asserted violation of a Caltrans manual—a document that was not before the trial court—rendered the notice invalid, forfeiting the argument. (See *Coziahr v. Otay Water Dist.* (2024) 103 Cal.App.5th 785, 799 ["[p]oints must be supported by reasoned argument, authority, and record citations, or may be deemed forfeited"].)  Baker's belated "realization" of a potential new argument based on the Caltrans manual does not establish good cause to authorize supplemental briefing on that still-undeveloped point.  (See *People v. Lewis* (2025) 111 Cal.App.5th 1078, 1099 & fn. 7 [appellate court does not develop appellants' arguments for them; rejecting still-underdeveloped argument offered in reply brief].)  The same is true regarding Baker's undeveloped and unsupported assertions of fraud raised in his February, March, and April 2026 requests for judicial notice.  We deny each of those requests, which again largely concern documents not before the trial court.

Furthermore, we deny BATA' s motion for sanctions in connection with Baker's March 2026 request for judicial notice.  Still, we remind Baker that "[d]espite his self-representation, we hold [him] to the same standard as an attorney" when it comes to following rules of procedure and professional conduct and refraining from " 'abusive litigation tactics.' " (*Sheerer v. Panas* (2026) 119 Cal.App.5th 367, 370.)  We may impose sanctions for the filing of frivolous motions, among other grounds (Cal. Rules of Court, rule 8.276(a)(3)), and Baker's frequent and often repetitive filings are entering that territory.

We likewise deny Baker's motion for an order disqualifying BATA's counsel.  Baker's disagreement with BATA's legal arguments and view that certain documents concerning Bay Lights 360 are inconsistent with one

another do not come close to showing a "manifest and glaring" ethical violation that could potentially support a motion to disqualify opposing counsel with whom the moving party never had an attorney-client or other confidential or fiduciary relationship.  (See *Moreci v. Scaffold Solutions, Inc.* (2021) 70 Cal.App.5th 425, 433–436, 444.)

Finally, each party argues the other should be subject to sanctions for misconduct in the preparation of the record on appeal or the administrative record, but neither complied with the required procedure for requesting sanctions on appeal in this context.  (See Cal. Rules of Court, rule 8.54(a)(1) ["a party wanting to make a motion in a reviewing court must serve and file a written motion"]; *id.*, rule 8.276 [party seeking appellate sanctions must file a motion for sanctions and supporting declaration].)  We decline to consider imposing sanctions on this ground.  (See *Barrera v. Apple American Group LLC* (2023) 95 Cal.App.5th 63, 96 [noncompliance with required procedure is grounds to deny requests for appellate sanctions].)

## B.  *Legal Background*

### 1.    **CEQA Exemption Determinations**

" 'With narrow exceptions,' " CEQA requires a public agency to prepare an environmental impact report whenever it " 'proposes to approve or to carry out a project that may have a significant effect on the environment.' " (*Sierra Club v. County of Fresno* (2018) 6 Cal.5th 502, 511.)  But "[f]or policy reasons, the Legislature has expressly exempted several categories of projects from review under CEQA.  (See § 21080, subds. (b)(1)–(15).)" (*Berkeley Hillside Preservation v. City of Berkeley* (2015) 60 Cal.4th 1086, 1092.)  The CEQA Guidelines also "establish 'a list of classes of projects that have been determined not to have a significant effect on the environment and that [are]

exempt from' CEQA."[6]  (*Ibid.*; § 21084, subd. (a).)  These include the exemption claimed by BATA here: "the operation, . . . leasing, licensing, or minor alteration of existing public or private structures, . . . involving negligible or no expansion of existing or former use."  (CEQA Guidelines, § 15301.)

The CEQA lead agency is "responsible for determining whether the project is exempt from" CEQA.  (§ 21080.1, subd. (a).)  "That determination shall be final and conclusive on all persons, including responsible agencies, unless challenged as provided in" the CEQA statute.  (*Ibid.*)  Agency staff may determine a project is exempt from CEQA, even where other decisionmakers are responsible for approving the project.  (See *McCann v. City of San Diego* (2021) 70 Cal.App.5th 51, 84 (*McCann*).)  "[T]here is no requirement that [an] agency put its exemption decision in writing" or otherwise comply with CEQA's procedural requirements in making this decision.  (*San Lorenzo Valley Community Advocates for Responsible Education v. San Lorenzo Valley Unified School Dist.* (2006) 139 Cal.App.4th 1356, 1384–1386.)

### 2.    Relevant Statutes of Limitations

While not required, "an agency *may* file a 'notice of exemption' . . . to start a 35-day statute of limitations period" to bring an action challenging its

___

[6] "The term 'CEQA Guidelines' refers to the regulations for the implementation of CEQA authorized by the Legislature (Pub. Resources Code, § 21083), codified in title 14, section 15000 et seq. of the California Code of Regulations, and 'prescribed by the Secretary for Resources to be followed by all state and local agencies in California in the implementation of [CEQA].'  (CEQA Guidelines, § 15000.)  In interpreting CEQA, we accord the CEQA Guidelines great weight except where they are clearly unauthorized or erroneous."  (*Muzzy Ranch Co. v. Solano County Airport Land Use Com.* (2007) 41 Cal.4th 372, 380, fn. 2.)

9

"decision that the project is exempt from CEQA. (§ 21167, subd. (d); [CEQA] Guidelines, § 15062, subd. (d).)" (*McCann, supra,* 70 Cal.App.5th at pp. 81–82.) A notice of exemption "may be prepared by staff when the exemption determination is made, but it may not be filed until after the project is approved. ([CEQA] Guidelines, § 15062, subd. (b).)" (*Id.* at p. 82, fn. 16.)

"If the public agency does not file a notice of exemption, or if it files an invalid or premature notice of exemption, any legal challenge to the exemption finding must be filed within 180 days of project approval or, if there is no formal project approval, within 180 days from the date of commencement of the project. ([] § 21167, subd. (d); [CEQA] Guidelines, §§ 15062, subd. (d), 15112, subd. (c)(5).)" (*Committee to Relocate Marilyn v. City of Palm Springs* (2023) 88 Cal.App.5th 607, 631 (*Committee to Relocate Marilyn*).) "[A] plaintiff is deemed to have constructive notice of a potential CEQA violation on all three alternative dates of accrual," such that the discovery rule does not apply to postpone the accrual of a CEQA claim. (*Communities for a Better Environment v. Bay Area Air Quality Management Dist.* (2016) 1 Cal.App.5th 715, 722, 725 (*Communities for a Better Environment*).) However, " 'if substantial changes are made to the "project" *after* the . . . [notice of exemption] filing or approval by the agency, a "new" 180-day period may begin to run from the time a plaintiff knew or should have known the project substantially differed from the original "project." ' " (*Committee to Relocate Marilyn, supra,* 88 Cal.App.5th at p. 631.)

### 3. Standard of Review

" 'In our de novo review of an order sustaining a demurrer, we assume the truth of all facts properly pleaded in the complaint or reasonably inferred from the pleading, but not mere contentions, deductions, or conclusions of law.' " (*Save Lafayette Trees v. East Bay Regional Park Dist.* (2021)

10

66 Cal.App.5th 21, 35 [affirming ruling that CEQA claim was barred by the statute of limitations].) " '[W]e also consider facts of which the trial court properly took judicial notice,' " and may disregard contrary allegations. (*Ibid.*)

Where "the trial court dismisses an action and denies leave to amend, ' "we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment." ' " (*Communities for a Better Environment, supra,* 1 Cal.App.5th at p. 722.) " 'The burden is on the plaintiff to show in what manner the pleading could be amended and how the amendment would change the legal effect of the pleading.' " (*Ibid.*)

## C. *Allegations Regarding the Encroachment Permit/Safety Study*

Consistent with his pleading in this action, Baker claims the encroachment permit issued by Caltrans in October 2024 (and discovered by him in April 2025) "imposed major new safety and scope requirements that were not part of the project contemplated by" the 2023 notice of exemption. He does not develop this argument in his opening brief, and we are not required to address the several points raised for the first time in his reply brief. (See *People v. Dunn* (2025) 18 Cal.5th 129, 183, fn. 13 [" 'We need not, and typically do not, address arguments raised for the first time in a reply brief.' "].) Still, exercising our discretion to do so, Baker's arguments fail.

The CEQA Guidelines explain that a CEQA "project" is " 'the whole of an action' " undertaken by a public agency (CEQA Guidelines, § 15378, subd. (a)), " 'which may be subject to several discretionary approvals by governmental agencies. The term "project" does not mean each separate governmental approval.' (CEQA Guidelines, § 15378, subd. (c).)" (*County of Mono v. City of Los Angeles* (2022) 81 Cal.App.5th 657, 669; see also *Citizens for a Better Eureka v. City of Eureka* (2025) 111 Cal.App.5th 1114, 1125 [the

11

CEQA action " ' "is not the approval itself but the development or other activities that will result from the approval" ' "].) To determine whether an activity is a component of a CEQA project, we ask whether it is " 'among the "various steps which taken together obtain [the project proponent's] objective" ' " or whether it is " 'part of a coordinated endeavor' " to effectuate the project. (*POET, LLC v. State Air Resources Bd.* (2017) 12 Cal.App.5th 52, 74–75 & fn. 15.)

Here, the trial court correctly explained that the encroachment permit and the safety study it describes "facilitate[] installation of the same LED fixtures described in the 2023" notice of exemption. The notice describes the three main components of Bay Lights 360 as (1) "the extension of the light sculpture for another 10 years"; (2) "the replacement of the light fixtures with newly updated and more robust fixtures . . ."; and (3) "the addition of light fixtures to the driver's (inward-facing) side" of the Bay Bridge's suspension cables. The encroachment permit grants permission to "[e]ncroach within [the] State's right-of-way to remove the existing 24,000 LED fixtures and install 48,000 small . . . LED light fixtures to the suspender cables." There is no dispute that these are descriptions of the same project. The more specific requirements discussed in the encroachment permit are steps to accomplish the single objective shared by the Bay Lights 360 project and the encroachment permit: the installation and operation of the new lights. Baker fails to allege or explain how operating the lights for purposes of an initial safety study or coordinating with different agencies to install and operate the project are anything other than steps in a coordinated endeavor to implement the project.[7]

---

[7] Relying on an internal Caltrans memorandum dated July 2024, Baker claims Caltrans directed BATA to "revalidate" the CEQA exemption for Bay

12

*Committee to Relocate Marilyn* is not to the contrary. There, the project described by the notice of exemption was the placement of a statue within an existing street, which the notice declared would require " '*vacat[ing] the public's vehicular access rights*' " to part of the street. (*Committee to Relocate Marilyn, supra*, 88 Cal.App.5th at p. 632.) Later, the agency "elected not to proceed with a [permanent] vacation process," but to close the street temporarily instead. (*Ibid.*) As the Court of Appeal explained, this was a substantial change: the materially different "duration" of the vehicular access restrictions "surely could have significantly different environmental impacts." (*Id.* at p. 634.) Irrespective of the agency's belief that the new approach would "be less impactful to the environment," the public was entitled "to evaluate the changed project for itself." (*Id.* at p. 635.) Moreover, "the project description in the notice of exemption (street vacation) could have induced members of the public to refrain from" promptly challenging the project,

Lights 360—which, according to Baker, shows Caltrans believed the original exemption determination was insufficient or that the project, at some point, had substantially changed. But the memorandum states that Illuminate (not BATA) is required to revalidate the exemption "[b]efore approval of an encroachment permit for installation." Whatever the memorandum author meant by this—and her view does not impact our de novo review of the trial court's demurrer analysis—Caltrans approved the encroachment permit several weeks after the date on the memorandum, suggesting it deemed any such requirement satisfied rather than unsatisfied. In any case, Baker did not seek judicial notice of this document in the trial court or in this court: he just attached it to a trial court brief concerning the deadline to certify the administrative record. We decline to consider the memorandum. (See *Lindstrom v. California Coastal Com.* (2019) 40 Cal.App.5th 73, 103, fn. 31 [declining to take judicial notice of documents unaccompanied by a formal request and irrelevant to resolution of the appeal].) We likewise decline to consider arguments based on Baker's unsupported assertions during oral argument that efforts to activate the driver's side lights have been blocked or abandoned due to unsatisfied safety testing requirements.

13

believing the agency would be unable "to make the findings necessary to vacate the street"—which was the very reason the agency ultimately changed course to a temporary closure. (*Ibid.*)

There are no similar circumstances here. BATA's coordination with Caltrans and other agencies and Caltrans's requirement of a safety study to implement the Bay Lights 360 project do not change or contradict anything in the notice of exemption but are merely steps towards the installation and operation of the new lights. These steps are akin to those addressed by *Van de Kamps Coalition v. Board of Trustees of Los Angeles Community College Dist.* (2012) 206 Cal.App.4th 1036 (*Van de Kamps*), where the Court of Appeal affirmed a ruling on demurrer that a CEQA claim was time-barred. The appellate court held the statute of limitations was triggered by the agency's initial approval of a project to lease a site to third parties. (*Id.* at p. 1046.) It rejected the appellant's argument "that a new limitations period was triggered by the [subsequent] execution of the lease . . . , because it was only at that point" that the project's actual "traffic impacts would be realized." (*Id.* at p. 1048.) The court observed that those impacts were already contemplated when the project was approved. (*Ibid.*) So too here: whatever traffic and related impacts might result from installing and operating Bay Lights 360 for safety testing will equally result from installing and operating the project on an ongoing basis. Baker's vague and speculative argument to the contrary cannot transform the installation and testing of the Bay Lights 360 project itself into a new or substantially different project. (See *id.* at pp. 1047, 1050–1051 [rejecting additional theory that approval of a balcony and driveway triggered a new statute of limitations where "appellant failed to allege what additional or changed impacts resulted from" those

14

projects "that had not already been considered" during the overall project approval].)

The trial court correctly determined that the encroachment permit and the safety study it describes are components of the overall Bay Lights 360 project, and do not constitute a new project or a substantial change to the project under CEQA. Since this is the only theory Baker alleged in the present action, the court properly sustained BATA's demurrer.

### D. Leave to Amend: Issues Actually Litigated in Baker's First Action

Despite limiting his allegations in the present action to focus on the Caltrans encroachment permit and safety study, in his appellate briefing, Baker presents extensive argument about the validity of the 2023 notice of exemption, the timing of BATA's approval of the overall Bay Lights 360 project, and the statute of limitations applicable to a CEQA challenge to that larger project. He took the same approach in the trial court proceedings; the court determined its prior rulings precluded Baker from relitigating these issues and sustained BATA's demurrer without leave to amend.

As we will explain, we agree with the trial court that Baker is precluded from raising the same arguments concerning the statute of limitations that were actually litigated in his first CEQA action. And Baker has offered no other theory establishing a reasonable possibility he could allege facts showing his CEQA challenge to Bay Lights 360 was timely. We consequently affirm the trial court's ruling denying Baker leave to amend his CEQA claim.

#### 1. Relevant Legal Principles

"The law of preclusion helps to ensure that a dispute resolved in one case is not relitigated in a later case." (*Samara v. Matar* (2018) 5 Cal.5th

15

322, 326 (*Samara*).)[8] "[T]he doctrine has ancient roots," and "its contours . . . have evolved over time." (*Ibid.*) Adding to this complexity, rules of preclusion are "inextricably intertwined with rules of procedure." (*Id.* at p. 332.) This reflects a balance between the reality that, at some point, "finality 'has to be accepted if . . . there is to be practical meaning to the idea that legal disputes can be resolved by judicial process' " and the core principle that " '[t]he "chance" to litigate is not simply some unspecified opportunity for disputation over legal rights; it is the opportunity to submit a dispute . . . to a tribunal legally empowered to decide it according to definite procedural rules.' " (*Ibid.* [quoting from the Restatement Second of Judgments, Introduction].) A key procedure in this regard is "[t]he availability of a direct appeal," which reflects an assessment that trial court proceedings generating a disputed decision are "not sufficient to resolve litigation conclusively." (*Id.* at p. 333.)

At issue in this case is the doctrine of issue preclusion, which "prevents 'relitigation of previously decided issues,' rather than causes of action as a whole." (*Samara, supra,* 5 Cal.5th at p. 327.) Perhaps as a reflection of its long evolution, even recent opinions by our Supreme Court describe the doctrine's requirements somewhat differently. One common formulation consists of four requirements: " '(1) . . . final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party.' " (*Ibid.*) Another renumbers the requirements and adds to the finality requirement: " ' "First, the issue . . . must be identical to that

---

[8] Like our Supreme Court, we generally "refer to 'claim preclusion' rather than 'res judicata' " and "use 'issue preclusion' in place of 'direct or collateral estoppel.' " (*Ibid.*)

decided in a former proceeding.  Second, this issue must have been actually litigated" ' " and " ' "[t]hird, it must have been necessarily decided in the former proceeding.  Fourth, the decision . . . must be final *and on the merits*. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." ' "  (*People v. Curiel* (2023) 15 Cal.5th 433, 451–452 (*Curiel*), italics added.)

Relying on several authorities that omit the "on the merits" language from their recitation of issue preclusion's requirements, BATA contends this requirement applies only in the context of claim preclusion.  But none of the authorities BATA cites to support this argument so hold,[9] and there is authority holding, to the contrary, that the "on the merits" requirement applies equally to both types of preclusion.  (See *Parkford Owners for a Better Community v. Windeshausen* (2022) 81 Cal.App.5th 216, 227 [because appeal in prior action "was not disposed of 'on the merits' " but was decided on the ground of mootness, "neither claim nor issue preclusion apply"].)  This is consistent with our Supreme Court's discussion of the "two ways" in which the doctrines differ: "First, issue preclusion does not bar entire causes of action.  Instead, it prevents relitigation of previously decided issues.  Second,

---

[9] *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823–827 (*DKN Holdings*) and *Grande v. Eisenhower Medical Center* (2022) 13 Cal.5th 313, 323–329 (*Grande*) addressed the privity requirement of issue preclusion. *Samara, supra,* 5 Cal.5th at p. 334 held that "a ground reached by the trial court and properly challenged on appeal, but not embraced by the appellate court's decision" does not have preclusive effect.  *Tukes v. Richard* (2022) 81 Cal.App.5th 1, 21–23 held that a voluntary dismissal with prejudice did not satisfy the " 'actual litigation' " requirement for issue preclusion. *640 Octavia LLC v. Walston* (2025) 111 Cal.App.5th 861, 871 (*640 Octavia*) held that dismissal with prejudice pursuant to a terminating sanction was not preclusive within the same action, in which the parties continued to litigate a cross-complaint.

unlike claim preclusion, issue preclusion can be raised by one who was not a party or privy in the first suit." (*DKN Holdings, supra,* 61 Cal.4th at p. 824; see also *Grande, supra,* 13 Cal.5th at p. 323 [similarly identifying the privity requirement as the key difference between the doctrines].)

Ultimately, we need not resolve the issue. As we will explain, assuming that the "on the merits" requirement does apply to issue preclusion, it is satisfied in this case, as are the other requirements of the doctrine.

### 2. Analysis

There is no dispute that the trial court's ruling in the first action became final after Baker failed to appeal, and that Baker is the party against whom the relevant issues were resolved in both proceedings. We focus our analysis on the other requirements of issue preclusion.

#### a. *Identical Issues*

The trial court rejected in Baker's first action the very same arguments concerning the statute of limitations governing his CEQA challenge to Bay Lights 360 that Baker raises in his briefing in this appeal. In the first action, the court expressly rejected Baker's argument that his claim was timely because BATA never formally approved the project, so the 35-day statute of limitations that would run from the filing of a valid notice of exemption did not apply. The court also expressly rejected Baker's position that the statute of limitations did not begin to run until construction began on the project in December 2024. Instead, the court ruled that "[u]nder CEQA, 'approval' of a project is 'the decision by a public agency which commits the agency to a definite course of action in regard to a project,' " which "occurs upon the agency's earliest approval, not the last." The court specifically ruled that BATA "undert[ook]" or committed to move forward with the Bay Lights 360 project "no later than January 11, 2023, when [the] BATA Oversight

18

Committee held a public meeting where the new scope of the Project was presented." Therefore, the court concluded, Baker's claim was barred by both the 35-day and the 180-day statutes of limitation.

b. *Issues Actually Litigated and Necessarily Decided*

These issues were actually litigated and necessarily decided in the first action. As to the former requirement, " ' "[w]hen an issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated . . . . An issue may be submitted and determined on a motion to dismiss for failure to state a claim, a motion for judgment on the pleadings, . . . or their equivalents, as well as on a judgment entered on a verdict. A determination may be based on a failure of pleading or of proof as well as on the sustaining of the burden of proof." ' " (*Murphy v. Murphy* (2008) 164 Cal.App.4th 376, 400–401 [substituted judgment ordered by probate court was issue preclusive]; see also Rest.2d Judgments, § 27.) Here, the trial court's order is clear that these issues were decided. (See *Murphy, supra,* 164 Cal.App.4th at p. 400 [actual litigation may be difficult to determine "where the former judgment or order does not show on its face that the particular issue was decided"].) Moving to the next requirement, "[w]hether an issue was ' "necessarily decided" has been interpreted to mean that the issue was not " 'entirely unnecessary' " to the judgment in the prior proceeding.' " (*Ibid*.) Here, the trial court granted BATA's demurrer to Baker's CEQA claim in the first action based precisely on the statute of limitations and entered judgment accordingly, so this requirement is also satisfied.

c. *Determination on the Merits*

That brings us to Baker's main argument against applying issue preclusion to the trial court's findings: that a ruling applying the statute of

19

limitations on demurrer is not "on the merits." Baker relies primarily on *Goddard v. Security Title Insurance & Guarantee Co.* (1939) 14 Cal.2d 47 (*Goddard*), which discussed this requirement in the context of res judicata or claim preclusion.

Goddard explained that "a judgment based upon the sustaining of a *special* demurrer for technical or formal defects is clearly not on the merits"; however, "judgments based upon sustaining a *general* demurrer have given rise to an apparent conflict of decision, and careful distinctions must be drawn between the cases."[10] (*Goddard, supra*, 14 Cal.2d at p. 52, italics added.) *Goddard* clarified that "[a] judgment given after the sustaining of a general demurrer on a ground of substance, for example, that an absolute defense is disclosed by the allegations of the complaint, may be deemed a judgment on the merits, and conclusive in a subsequent suit; and the same is true where the demurrer sets up the failure of the facts alleged to establish a cause of action, and the same facts are pleaded in the second action." (*Ibid.*) But a judgment on a general demurrer arising from mere "technical or formal" defects will not be a bar where "the plaintiff . . . by a different pleading eliminate[s] them or correct[s] the omissions and allege[s] facts constituting a good cause of action, in proper form." (*Ibid.*) Applying these principles, *Goddard* held that res judicata did not apply on the record before it, where the prior judgment "was based upon formal matters of pleading"— namely, "that the complaint was framed on a theory of conversion rather than an action on the case; and . . . that it was uncertain and insufficient in its pleading of causal connection between the violation [alleged] and the

---

[10] A demurrer alleging an action is barred by the statute of limitations is "considered one of general demurrer." (*Weinstock v. Eissler* (1964) 224 Cal.App.2d 212, 225.)

20

resulting loss to the plaintiff." (*Id.* at p. 53.)  Under these circumstances, *Goddard* concluded that the prior demurrer was not sustained "on a matter of substance which could not be remedied by another pleading." (*Ibid.*)

Several decades after *Goddard,* Baker's next authority, *Association of Irritated Residents v. Department of Conservation* (2017) 11 Cal.App.5th 1202 (*Irritated Residents*), was decided.  *Irritated Residents* noted *Goddard*'s direction that a judgment on the merits "may include a judgment of dismissal following a general demurrer or a dismissal motion if the disposition was plainly reached 'on a ground of substance.' " (*Id.* at p. 1220.)  It then went on to state that a judgment based on the statute of limitations would not be on the merits—and to hold that a judgment based on mootness or lack of ripeness was likewise not on the merits. (*Id.* at p. 1221.)

*Irritated Residents* cited two authorities to support its dictum statement that a judgment based on the statute of limitations is not on the merits.[11]  The first, *Mid-Century Ins. Co. v. Superior Court* (2006) 138 Cal.App.4th 769, 776–777 (*Mid-Century*), interpreted a statute that revived claims by owners of property damaged in the Northridge earthquake, rather than directly applying issue or claim preclusion, making its discussion of this issue dicta as well.  *Mid-Century* relied on the other authority cited by *Irritated Residents*, *Koch v. Rodlin Enterprises* (1990) 223 Cal.App.3d 1591 (*Koch*).  *Koch* found a decision was not on the merits for purposes of res judicata where the trial court in the first action held on summary judgment "that plaintiffs' action was barred by the statute of limitations for contract rescission actions." (*Id.* at p. 1597.)  *Koch* characterized this as "a procedural but not absolute defense" that did not bar a subsequent action "*based on*

---

[11] *Samara, supra,* 5 Cal.5th at p. 338, assumed the same was true without deciding the issue.

*common law fraud*" allegedly "discovered *within the applicable limitations period.*" (*Ibid.*, italics added.) Thus, in *Koch*, the statute of limitations theory at issue in the second case was not actually litigated or necessarily decided in the first case. Or as *Goddard* put it, the first action was not a bar to the second because the plaintiff newly "allege[d] facts constituting a good cause of action." (*Goddard, supra*, 14 Cal.2d at p. 52.)[12] *Koch*, in turn, relied on *Lackner v. LaCroix* (1979) 25 Cal.3d 747, 749–752 (*Lackner*), which held that dismissal of an action based on the statute of limitations was not a termination on the merits favorable to the defendant "in the sense [that] it would support a subsequent action for *malicious prosecution.*" (Italics added; see also *Finnie v. District No. 1 - Pacific Coast Dist. etc. Assn.* (1992) 9 Cal.App.4th 1311, 1319 [citing *Koch* in dicta discussion of res judicata effect of a dismissal based on the statute of limitations].)

---

[12] The same was true in *Boyd v. Freeman* (2017) 18 Cal.App.5th 847 (*Boyd*), which was cited by neither party but stated, like *Koch*, that a ruling sustaining a demurrer based on the statute of limitations was not on the merits. *Boyd* held that claim preclusion did not apply to bar a second action alleging "new claims . . . predicated on additional factual allegations." (*Id.* at p. 859.) It first affirmed that claim preclusion "may be invoked even when the prior judgment resulted from the sustaining of a demurrer, provided that the judgment was 'on the merits,' " an issue which "depends upon the facts of the case and the reason for the ruling." (*Id.* at p. 855.) *Boyd* explained that " 'generally[,] . . . a demurrer which is sustained for failure of the facts alleged to establish a cause of action[] is a judgment on the merits,' " but " 'only if the same facts are pleaded in the second action [citation], or if, although different facts are pleaded, the new complaint contains the same defects as the former.' " (*Ibid.*) Changing course, *Boyd* then stated that "a prior judgment based on the statute of limitations ordinarily is not on the merits," citing *Koch* and *Mid-Century*. (*Id.* at p. 856.) It then returned to the first concept: "a judgment due to a demurrer to potentially curable defects in the complaint's allegations also is not on the merits." (*Ibid.*) In our view, the latter point is the key to the outcome in *Boyd*.

The analyses in these authorities—which are all distinguishable from our case—do not turn on the "careful distinctions" demanded by *Goddard*. (*Goddard, supra*, 14 Cal.2d at p. 52.)  *Goddard* itself did not specifically address the preclusive effect of a ruling based on the statute of limitations, but it did say that res judicata would apply "where the demurrer sets up the failure of the facts alleged to establish a cause of action, *and the same facts are pleaded in the second action*." (*Ibid.*, italics added.)  That is the situation we are faced with here, where Baker seeks to relitigate the exact same arguments concerning the statute of limitations that were resolved against him in the first action.

Notably, *Goddard* cited *Newhall v. Hatch* (1901) 134 Cal. 269, 272, which analyzed the preclusive effect of a prior judgment based on the statute of limitations using the same logic *Goddard* emphasized, explaining that "[a] judgment rendered upon sustaining a demurrer to the complaint upon the ground that the facts stated therein do not entitle the plaintiff to a recovery *will be a bar to an action for a recovery upon the same facts*, but[,] if other facts are stated[,] which supply the defects in the first statement, or which present a different cause of action, the judgment upon the demurrer will not be a bar to the second action." (Italics added.)  Likewise, the Restatement explains that claim preclusion applies "to a judgment for the defendant on demurrer or motion to dismiss for failure to state a claim," which "is warranted by the ease with which pleadings may be amended . . . and by the unfairness of requiring the defendant to submit to a second action . . . when no such amendment is sought, or when no appeal has been taken from an erroneous denial of leave to amend." (Rest.2d Judgments § 19, com. d, p. 164; see also 7 Witkin, Cal. Proc. (6th ed. 2026) Judgment, § 404, p. 923 ["A judgment on general demurrer will be a bar under [*Goddard*], if the new

23

complaint states the same facts and the former judgment determined that these facts did not constitute a cause of action"].)

We are not the first court to question whether authorities' treatment of this issue has drifted from the nuanced discussion in *Goddard*. (See *Perez v. Roe 1* (2006) 146 Cal.App.4th 171, 186 [explaining in dicta that "[w]hile *Goddard* and *Koch* might allow a second action that either alleges new facts, an entirely new claim, or an alternative theory subject to a different limitations period, they do not purport to hold that a judgment based on the statute of limitations is not res judicata when no new facts or alternative theories are available"].) This may be because the "on the merits" requirement is a poor fit to this procedural context. (See *Samara, supra,* 5 Cal.5th at p. 331 [noting that "[t]he second Restatement does not appear to take an explicit position on the claim preclusive effect of a judgment affirmed on a nonmerits ground, perhaps reflecting aversion to the terminology ' "on the merits," ' which has ' possibly misleading connotations' "].)[13]

Consistent with *Goddard* and the Restatement, *McClain v. Rush* (1989) 216 Cal.App.3d 18, 27–29 held that a ruling on summary judgment based on the statute of limitations was preclusive, although without squarely

---

[13] The Restatement explains:
"It is frequently said that a valid and final personal judgment for the defendant will bar another action on the same claim only if the judgment is rendered ' on the merits.' The prototype case continues to be one in which the merits of the claim are in fact adjudicated against the plaintiff after trial of the substantive issues. Increasingly, however, by statute, rule, or court decision, judgments not passing directly on the substance of the claim have come to operate as a bar. Although such judgments are often described as ' on the merits' . . . [,] that terminology is not used here in the statement of the general rule because of its possibly misleading connotations." (Rest.2d Judgments § 19, com. a, p. 161.)

24

addressing the "on the merits" issue. Similarly, *Border Business Park, Inc. v. City of San Diego* (2006) 142 Cal.App.4th 1538, 1565–1566 (*Border Business Park*) held that a ruling on demurrer concerning the timeliness of a claim under the Government Claims Act was preclusive. And other authorities hold issue preclusion bars relitigation of arguments already resolved against a party in the context of issues like personal jurisdiction, whether a claim arises from protected activity for purposes of Code of Civil Procedure section 425.16 (the anti-SLAPP statute), and others for which the "on the merits" language is an awkward fit. (See *MIB, Inc. v. Superior Court* (1980) 106 Cal.App.3d 228, 232–235 [personal jurisdiction]; *Sabek, Inc. v. Engelhard Corp.* (1998) 65 Cal.App.4th 992, 997–1000 [personal jurisdiction]; *South Sutter, LLC v. LJ Sutter Partners, L.P.* (2011) 193 Cal.App.4th 634, 658 [anti-SLAPP determination]; *640 Octavia, supra,* 111 Cal.App.5th at p. 871 [discussing how "dismissal with prejudice pursuant to a terminating sanction [is] treated as claim or issue preclusion in a second lawsuit"].)

We agree with these outcomes, and concur with the Restatement's observation (which *Samara* seems to endorse) that the "on the merits" terminology can be confusing.[14] Applying *Goddard*, a ruling has preclusive effect "where the demurrer sets up the failure of the facts alleged to establish a cause of action, and the same facts are pleaded in the second action." (*Goddard, supra*, 14 Cal.2d at p. 52.) That is the case here, and the "on the merits" requirement is satisfied.

---

[14] Notably, even the original Restatement of Judgments—which, unlike its successor, included the "on the merits" requirement in its definition of claim preclusion—provided that the requirement did not apply to issues "actually decided" in a first unsuccessful action by the plaintiff against the defendant, including an action where judgment entered on the ground "that the complaint is insufficient in law." (Rest., Judgments §§ 48–50.)

25

### d. *Public Policy Concerns*

Finally, "the public policies underlying [issue preclusion or] collateral estoppel—preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation—strongly influence whether its application in a particular circumstance would be fair to the parties and constitutes sound judicial policy." (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 343 [assuming the elements of collateral estoppel were satisfied but declining to apply the doctrine given policy concerns unique to criminal law].) All of these policies support applying the doctrine here. It would undermine these goals to allow Baker to fully litigate his arguments concerning the statute of limitations in one action, fail to appeal from the trial court's ruling, and then repeat the process by filing a new lawsuit. Allowing repetitious litigation of issues would be especially problematic in the context of the CEQA statute of limitations, which the Legislature made unusually short "to ensure extremely prompt resolution of lawsuits claiming noncompliance" with the statute. (See *Stockton Citizens for Sensible Planning v. City of Stockton* (2010) 48 Cal.4th 481, 499–500 [statutes of limitation governing challenges to public land use planning decisions "are typically short," in order "[t]o ensure finality and predictability" in such decisions].)

Returning to our initial discussion, our Supreme Court has "repeatedly underscored the important role that the availability of appellate review plays in ensuring that a determination is sufficiently reliable to be conclusive in future litigation." (*Samara, supra,* 5 Cal.5th at p. 333.) Such review was available to Baker in the first action, but he "waived or forfeited" it by "fail[ing] to file a timely notice of appeal." (*Ibid.*) Similar to the plaintiff in *Border Business Park*, Baker "effectively acquiesced in the ruling [in the first

26

action] by failing to . . . appeal" and instead filed a second action alleging a different theory (which fails as a matter of law). (*Border Business Park, supra,* 142 Cal.App.4th at p. 1565 [plaintiff attempted to avoid a ruling that his claim was untimely under the Government Claims Act by presenting a Government Code claim rather than appealing the trial court's ruling].) "Having decided not to pursue the remedy available to" him, Baker "should not now be able to contend that the order is not a final adjudication of the issues it addressed. Under these circumstances, the order sustaining the demurrer precludes relitigation of the issues already adjudicated." (*Ibid.*)

## III. DISPOSITION

The judgment is affirmed. BATA is entitled to its costs on appeal.

27

_____
                       SMILEY, J.

WE CONCUR:


_____

BANKE, Acting P. J.



_____

LANGHORNE WILSON, J.


*Baker v. Bay Area Toll Authority* / A174642

Trial Court:        City and County of San Francisco Superior Court

Trial Judge:        Hon. Jeffrey S. Ross

Counsel:

Mark Baker for Plaintiff and Appellant

Stoel Rives, Amy R. Higuera, Samuel D. Bacal-Graves; and Metropolitan Transportation Commission, Kathleen Kane, Scott N. Spansail for Defendant and Respondent

*Baker v. Bay Area Toll Authority* / A174642